*In re* MARRIAGE OF PAULA N. DERNING, Respondent-Appellant, and JOHN P. DERNING, Petitioner-Appellee.

Second District   No. 82—466

Opinion filed August 23, 1983.

William G. Rosing and Stephen G. Applehans, both of Rosing, Carlson & Magee, Ltd., of Waukegan, for appellant.

Roger A. White, of Roger A. White & Associates, Ltd., of Lake Bluff, and Gary E. Dienstag, of Springer, Casey, Haas, Dienstag & Silverman, of

Chicago, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Respondent, Paula N. Derning, appeals from an order of the circuit court of Lake County which dissolved her marriage of 23 years to petitioner, John P. Derning, apportioned the marital and nonmarital property of the parties, granted respondent unallocated child support and maintenance, and awarded each parent custody of one of the parties' two minor children. On appeal, respondent raises three assignments of error before this court: (1) the trial court's award of unallocated maintenance and child support was insufficient considering her limited employment income and lack of income from the marital assets she was awarded; (2) the court below failed to place a value on the business known as Mother's Blues, thereby committing reversible error; and (3) the trial court, in allocating the marital property, failed to value and apportion petitioner's pension benefits. Petitioner has filed a motion to dismiss this appeal, and this court has ordered that the motion and respondent's response to it be considered with this case.

We first address petitioner's contention that we are without jurisdiction to hear this appeal. To facilitate our discussion of the jurisdictional question presented, we recite chronologically certain procedural events in this case. On April 16, 1981, the trial court granted the motion of respondent's counsel, Lois B. Ryan, to withdraw and entered an order valuing her services at $1,863.90 and reducing this amount to judgment, but reserved for a later date the apportioning of the attorney fees liability between the parties. Respondent's second attorney, Stephen Katz, was granted leave to withdraw on August 28, 1981. On September 14, 1981, the court continued Ryan's hearing on attorney fees until the property matters between the parties were resolved. On motion of Katz the court on January 19, 1982, entered judgment for his attorney fees against respondent in the amount of $5,130. At a hearing on April 28, 1982, the court vacated its January 19, 1982, order in which respondent had been assessed the $5,130 for Katz' attorney fees, but confirmed its entry of judgment on the amount of those fees and ordered that on June 10, 1982, it would apportion liability for that judgment between the parties. In that same April 28, 1982, order the court directed that attorney fees in the amount of $2,087.87 be awarded to Ryan, reduced that amount to judgment and ordered that liability for those fees also be apportioned on June 10, 1982.

Thereafter, on May 7, 1982, the court entered an order dissolving

the marriage, apportioning the parties' property, granting respondent unallocated child support and maintenance, and awarding each parent custody of one of the children. Respondent filed her notice of appeal from this order on June 3, 1982. On June 10, 1982, the court ordered that petitioner pay $1,565.77 and respondent pay $522 of Ryan's attorney fees. Petitioner filed a notice of cross-appeal on June 25, 1982, from that portion of the court's order assessing Ryan's fees against him. The court on June 23, 1982, apportioned $3,675 of the judgment for Katz' attorney fees to petitioner and $1,225 to respondent. Petitioner filed a supplemental notice of appeal on July 6, 1982, from that portion of the court's order assessing Katz' fees against him. In his brief to this court, petitioner has abandoned his cross-appeal and supplemental appeal and thus, we dismiss them.

In his motion to dismiss and brief to this court, petitioner argues that the May 7, 1982, order was not final because no judgment had then been entered on the fee petitions, the court did not make a written finding of appealability required by Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)), respondent did not file a notice of appeal after judgment was entered on the petitions, and therefore, this court is without jurisdiction to hear this appeal. Petitioner challenges the reasoning of the cases relied upon by respondent and argues that attorney fees are an integral part of the dissolution proceeding and therefore must be apportioned before the court's order can be final and appealable. In response, respondent asserts that the May 7, 1982, divorce decree determining the rights of the parties to this lawsuit was a final and appealable order, and the apportioning of fees between the parties was collateral and incidental to the final divorce decree.

Central to respondent's argument that attorney fees are incidental is *Pettit v. Pettit* (1978), 60 Ill. App. 3d 375, 376 N.E.2d 782. In *Pettit*, the trial court entered an order which dissolved the marriage, divided the property, and awarded alimony. While the court reserved jurisdiction to enforce the decree and to determine attorney fees, it did not make the express finding required by Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal of its order. Rejecting the petitioner's contention that the trial court's reservation deprived the reviewing court of jurisdiction, the *Pettit* court stated:

"A divorce decree reserving the question of attorney's fees, although final in other respects, is not final as to incidental questions expressly reserved. (*Hokin v. Hokin* (1968), 102 Ill. App. 2d 205, 215-16, 243 N.E.2d 579.) The test of finality lies in the substance, not the form of the order, and a divorce decree

which terminates the litigation on the merits is final so long as all that remains is the execution of the order. (*Myers v. Myers* (1977), 51 Ill. App. 3d 830, 837, 366 N.E.2d 1114, 1121.) The trial court reserves jurisdiction to later rule on the question of attorney's fees, that ruling may be made in a 'supplemental decree' subsequent to entry of a final, appealable decree. *Bremer v. Bremer* (1954), 4 Ill. 2d 190, 191-92, 122 N.E.2d 794." *Pettit v. Pettit* (1978), 60 Ill. App. 3d 375, 378, 376 N.E.2d 782, 785.

We believe that the result reached in *Pettit* is unsound. A careful analysis of the cases cited by the *Pettit* court reveals that they do not support the *Pettit* court's conclusion that a reservation of attorney fees does not impair the finality and appealability of the court's order. The *Pettit* court cited *Bremer v. Bremer* (1954), 4 Ill. 2d 190, for the proposition that a trial court can reserve determination on the question of attorney fees until after entry of a final and appealable decree. In *Bremer*, the trial court entered a decree of divorce, and retained jurisdiction to rule on alimony, attorney fees and property distribution. Thereafter, the court entered a supplemental decree "awarding permanent alimony, fixing attorney's fees and ordering the conveyance of certain real estate by and between the parties." (*Bremer v. Bremer* (1954), 4 Ill. 2d 190, 191.) A direct appeal was taken to the supreme court after the trial court had entered the supplemental decree. There, the supreme court held that the trial court did have the power to rule on matters expressly reserved by the terms of its divorce decree.

*Bremer v. Bremer* (1954), 4 Ill. 2d 190, does not support the holding in *Pettit v. Pettit* (1978), 60 Ill. App. 3d 375, 376 N.E.2d 782, for three reasons. First, *Bremer* was concerned solely with trial court and not appellate jurisdiction. Second and more important, in *Bremer* the trial court had ruled on attorney fees and all other issues prior to the filing of the notice of appeal. Since no issue remained unresolved, the supplemental decree was unquestionably a final and appealable order. Here, in contrast, attorney fees had not yet been apportioned when the appeal was taken. Third, the supreme court's decision in *In re Marriage of Cohn* (1982), 93 Ill. 2d 190, seriously weakens the validity of *Bremer*. In *Cohn*, the court held that only under appropriate circumstances can a trial court bifurcate a judgment of dissolution pursuant to section 401(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 401(3)). While the *Cohn* court did not expressly overrule *Bremer* but instead distinguished it in part on the basis that section 401(3) had no counterpart in the divorce act applicable when *Bremer* was decided, *Bremer*'s continued

viability is questionable.

While relying principally on *Bremer v. Bremer* (1954), 4 Ill. 2d 190, the *Pettit* court (*Pettit v. Pettit* (1978), 60 Ill. App. 3d 375, 376 N.E.2d 782), also cited *Hokin v. Hokin* (1968), 102 Ill. App. 2d 205, 215-16, 243 N.E.2d 579, for the proposition that a divorce decree which reserves attorney fees "although final in other respects, is not final as to incidental questions expressly reserved." (*Pettit v. Pettit* (1978), 60 Ill. App. 3d 375, 378, 376 N.E.2d 782, 785, citing *Hokin*.) Just as in *Bremer*, however, the question in *Hokin* was trial court and not appellate jurisdiction. The trial court in *Hokin* had reserved the question of attorney fees only until entry of the divorce decree. The reviewing court in *Hokin* distinguished its facts from those in *Bremer* in that no written fee petition was filed by the parties in *Hokin* prior to the divorce decree. The specific holding in *Hokin* was that the trial court did not have jurisdiction to vacate the divorce decree 76 days after the decree was entered and 50 days after the notice of appeal was filed in order to include in the decree attorney fees for past services rendered. (*Hokin v. Hokin* (1968), 102 Ill. App. 2d 205, 216, 243 N.E.2d 579, 585.) Thus, *Hokin* is not supportive of the *Pettit* court's holding that an unresolved attorney fees petition is incidental to a divorce decree and therefore does not impair its finality and appealability.

The *Pettit* court's reliance on *Myers v. Myers* (1977), 51 Ill. App. 3d 830, 366 N.E.2d 1114, also does not support its holding. In *Myers*, the trial court entered an order distributing property and awarding child support and the petitioner appealed from that order. Thereafter, the trial court entered a *nunc pro tunc* order which added more specific provisions to the earlier order. On appeal, the reviewing court rejected the petitioner's contention that his notice of appeal divested the trial court of jurisdiction to enter the *nunc pro tunc* order. Since the trial court's property distribution and child support order was not a final judgment, the *Myers* court held, the trial court maintained jurisdiction until after the entry of the *nunc pro tunc* order.

While the *Myers* court did conclude that the trial court's initial order was not appealable, *Myers* principally was concerned with trial court and not appellate court jurisdiction. *Myers* does not support the result reached in *Pettit v. Pettit* (1978), 60 Ill. App. 3d 375, 376 N.E.2d 782, because *Pettit* held that an order which reserved determination of attorney fees was final and appealable, while *Myers v. Myers* (1977), 51 Ill. App. 3d 830, 376 N.E.2d 1114, held that an order which did not specifically grant the divorce was not a final and appealable order. The trial court in *Myers* only maintained jurisdiction

to amend its order at a later date because its initial order was not final and appealable. Therefore, apart from the general language extracted from *Myers* by the *Pettit* court, *Myers* does not provide support for the *Pettit* holding. Since the three cases relied upon by the *Pettit* court do not uphold its result, we believe *Pettit* was decided incorrectly.

No case has been cited to us nor can we find one which follows the holding in *Pettit v. Pettit* (1978), 60 Ill. App. 3d 375, 376 N.E.2d 782, that a reservation of attorney fees does not impair the finality and appealability of the divorce decree. In fact, one reviewing court has expressly disapproved of *Pettit. (In re Marriage of Janetzke* (1981), 97 Ill. App. 3d 418, 421, 422 N.E.2d 914, 917.) In addition, one recent decision while not citing *Pettit* concluded that attorney fees are not an incidental matter. In *Wilson-Jump Co. v. McCarthy-Hundrieser & Associates* (1980), 85 Ill. App. 3d 179, 405 N.E.2d 1322, the reviewing court rejecting the appellant-indemnitee's argument that the trial court's summary judgment order was final because the only matter left unresolved was the ministerial task of determining the reasonableness of the indemnitee's attorney fees. Instead, the court held that since the indemnitor was entitled to have the amount of the indemnitee's costs and attorney fees established under oath in court, the summary judgment order was not final. (*Wilson-Jump Co. v. McCarthy-Hundrieser & Associates* (1980), 85 Ill. App. 3d 179, 182, 405 N.E.2d 1322, 1325.) Just as in the case at bar, the trial court in *Wilson-Jump* did not include the Rule 304(a) (73 Ill. 2d R. 304(a)) finding in its order.

■ While the judgment appealed from in *Wilson-Jump Co. v. McCarthy-Hundrieser & Associates* (1980), 85 Ill. App. 3d 179, 405 N.E.2d 1322, was not a dissolution order, we believe that attorney fees are directly related to the central dispute in a dissolution-of-marriage case and thus are not incidental. Section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 508) empowers the trial court to require one party to pay the other party's attorney fees after consideration of the financial resources of the parties. Since this section requires a comparison of the parties' respective financial resources, the apportionment of the final fee award is inextricably dependent upon the ultimate division of property. (*See In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 636, 397 N.E.2d 488, 495.) A party seeking an award of attorney fees in a dissolution-of-marriage case must show financial inability to pay the fees and the financial ability of the other spouse to do so. (*In re Marriage of Hopkins* (1982), 106 Ill. App. 3d 135, 137-38, 435 N.E.2d

897, 899; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 581, 373 N.E.2d 576, 578.) Financial inability to pay does not mean destitution; it is sufficient to support an award of fees that disbursement of the individual's funds would exhaust his own estate, or strip him of a means of support and undermine his economic stability. *In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55, 62, 446 N.E.2d 1198, 1203; *In re Marriage of Kolb* (1981), 99 Ill. App. 3d 895, 903, 425 N.E.2d 1301, 1307; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 582, 373 N.E.2d 576, 579.

Thus, our statutory scheme requires the trial court to consider the property received by each party, their respective incomes and financial obligations before allocating responsibility for payment of attorney fees. Necessarily, attorney fees should be allocated before the reviewing court can properly assess the trial court's division of property and decisions regarding maintenance and child support. Since the allocation of attorney fees judgment is dependent upon and integrally related to decisions regarding property, maintenance and child support, their allocation cannot fairly be characterized as collateral or incidental to the divorce decree.

Our conclusion is buttressed by the Illinois Supreme Court's recent discussion of dissolution-of-marriage cases in *In re Marriage of Cohn* (1982), 93 Ill. 2d 190, 197-98. There, the court quoted from the historical and practice notes to section 401(3) (Ill. Ann. Stat., ch. 40,par. 401(3), Historical and Practice Notes, at 105 (Smith-Hurd 1980)), which governs dissolution-of-marriage judgments: "[Section 401(3)] encourages the court to decide all matters incident to the dissolution in a single judgment, to the fullest extent of its authority, in order to achieve finality, promote judicial economy, and avoid multiple litigations and complications which can result from the entry of partial judgments, particularly judgments which dissolve the marriage but 'reserve' remaining issues for later determination." Given the policy articulated in *Cohn* and reaffirmed in *In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 120, of deciding all the issues in a dissolution-of-marriage case in a single judgment, we believe attorney fees cannot be resolved in a supplemental hearing as an incidental matter to the divorce decree.

■ Since attorney fees are not an incidental matter, this court has jurisdiction of this case only if the divorce decree is a final judgment or if the fees are a separate claim pursuant to Rule 304(a) (73 Ill. 2d R. 304(a)). Here, we believe based upon the authority of the supreme court's recent decision in *In re Marriage of Leopando* (1983), 96 Ill. 2d 114, that the May 7, 1982, order was not a final judgment.

In *Leopando*, the trial court entered an order dissolving the parties' marriage and determining permanent custody of their minor child. In his custody order, the trial judge recited the Rule 304(a) language and specifically reserved maintenance, property distribution and attorney fees for future consideration. On appeal, the supreme court held that a custody order in a dissolution-of-marriage case is not a separate claim and therefore is not appealable pursuant to Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)). In support of its holding, the court reasoned that a petition for dissolution advances only a single claim and that the "numerous other issues involved, such as custody, property disposition, and support are merely questions which are *ancillary* to the cause of action." (*In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 119.) Stressing the interrelatedness of custody awards and decisions regarding child support and maintenance, the *Leopando* court concluded that a petition for dissolution is not a final judgment until the remaining issues are resolved.

The policy considerations underlying Rule 304(a), the court continued, also support the conclusion that a custody order is not a final judgment. Quoting from its earlier discussion of Rule 304(a) in *In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 407, the court said: " 'The provisions of our rule were aimed at discouraging piecemeal appeals in the absence of some compelling reason and at removing the uncertainty as to the appealability of a judgment which was entered on less than all of the matters in controversy.' " *In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 119, quoting *Lentz.*

We believe that the reasoning of the supreme court in *In re Marriage of Leopando* (1983), 96 Ill. 2d 114, leads to our conclusion that the May 7 order was not a final judgment. Like a custody order, an attorney fees judgment in a dissolution-of-marriage case is not a separate claim, but rather is integral to the order dissolving a parties' marriage. As noted by the *Leopando* court, "it is difficult to conceive of a situation in which the issues are more interrelated than those involved in a dissolution proceeding." (*In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 119.) In a case such as the one at bar, where one party challenges the sufficiency of the trial court's maintenance award in part because of the paucity of income-producing assets awarded to her, the allocation of an attorney fees judgment directly affects the reviewing court's determination of the adequacy of the maintenance award and property distribution. The parties' liability for attorney fees judgments is similar to their liability for debt incurred during the marriage. Both "liabilities" must be allocated to the parties before a reviewing court can determine if the trial court's deci-

sions concerning property and maintenance comport with the statutory requirements. Respondent's argument that the two attorney fees judgments are collateral to this dissolution proceeding because they were filed by counsel who had previously withdrawn from the case is unpersuasive. We see no reason to distinguish between attorney fees judgments in favor of prior counsel and counsel of record, both of which frequently amount to significant obligations of the parties affecting property and maintenance awards.

The policy considerations supporting the *Leopando* court's conclusion that a custody order is not final similarly support our conclusion that an order which dissolves the marriage but which leaves for later resolution the apportioning of attorney fees judgments between the parties is also not final. Without such a rule, conceivably parties could appeal from a maintenance and distribution award, the reviewing court could render its decision, the trial court after the appeal could apportion an attorney fees judgment between the parties, and another appeal could thereafter be taken challenging the trial court's attorney fees ruling. Such piecemeal appeals are inconsistent with the policy expressed by the supreme court in *In re Marriage of Cohn* (1982), 93 Ill. 2d 190, and *In re Marriage of Leopando* (1983), 96 Ill. 2d 114, that all issues within a dissolution-of-marriage case should be resolved in a single judgment. On the authority of *Leopando*, therefore, we believe that a dissolution-of-marriage case involves only one claim. Since the trial court reserved the allocation of attorney fees in its May 7 order, that order was not a final judgment from which an appeal could be taken. Our conclusion that the trial court's May 7 dissolution-of-marriage judgment did not become final until the court apportioned the two attorney fees judgments promotes finality, judicial economy and avoids multiple litigations of several partial judgments within one dissolution case.

■■■ Even if we are incorrect in concluding that a dissolution-of-marriage case involves only one claim and therefore attorney fee judgments must be allocated before a divorce decree an became final, the reasoning of our supreme court in *In re Marriage of Lentz* (1980), 79 Ill. 2d 400, compels us to conclude that we are nonetheless without jurisdiction to decide this appeal. In *Lentz*, the court stated it did not have to decide whether an order which granted a dissolution petition, but reserved maintenance and property distribution was final. Even if final, the *Lentz* court reasoned, since the order reserved several claims it was not appealable because it did not contain the Rule 304(a) language.

The order here reserves the allocation of attorney fees and there-

fore disposed of fewer than all of the claims. If, as we believe, this case involves but one claim, the May 7, 1982, order is not a final judgment and is not appealable. If the order is a final judgment, then the unallocated attorney fees are a separate claim which could only be appealable in the manner prescribed by Rule 304(a). That rule provides that an appeal cannot be taken from an order which disposes of fewer than all of the claims in the absence of an express written finding that there is no just reason to delay enforcement or appeal of the order. (*In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 408; *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 432-33.) Here, just as in *Lentz*, the order appealed from did not contain the Rule 304(a) language. Absent this language, the May 7 order was not a judgment from which an immediate appeal could be taken. Since respondent failed to file a notice of appeal after the judgment became final on June 23, 1982, and 30 days have now elapsed from entry of that final judgment, we believe no basis exists for respondent to initiate another appeal of the instant judgment to this court.

Accordingly, we grant petitioner's motion to dismiss, dismiss respondent's appeal from the circuit court of Lake County and dismiss petitioner's cross-appeal and supplemental appeal.

Petitioner's motion to dismiss granted, appeal dismissed, cross-appeal and supplemental appeal dismissed.

SEIDENFELD, P.J., and HOPF, J., concur.