*In re* MARRIAGE OF MARIANNE PICCIONE, Petitioner-Appellant, and JOHN J. PICCIONE, Respondent-Appellee.

Second District   Nos. 2—86—0768, 2—86—0956 cons.

Opinion filed April 16, 1987.—Rehearing denied May 20, 1987.

Jon L. Beermann & Associates, Ltd., of Libertyville, for appellant.

Robert R. Verchota and Keith E. Roberts, Sr., both of Donovan & Roberts, P.C., of Wheaton, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

This appeal arises from orders entered in post-judgment proceedings for increased child support and attorney fees. Marianne Piccione (petitioner) brought a petition for an increase in child support and for attorney fees. The trial court granted petitioner an increase in support and reserved judgment on attorney fees. Petitioner sought reconsideration of the support order, contending that the increase was too low. The trial court denied reconsideration. The trial court subsequently denied attorney fees. Petitioner appeals from both orders. We affirm.

Petitioner and John J. Piccione (respondent) were divorced pursuant to a judgment of dissolution of marriage entered on July 1, 1981. At the time of the judgment, the parties had three children. The par-

ties entered into a property settlement agreement which provided, *inter alia*, that respondent pay $1,500 per month in child support for the parties' three children. On November 29, 1982, an agreed order modifying judgment was entered which required respondent to pay, *inter alia*, an additional $200 per month as unallocated child support. The additional $200 was consideration for petitioner's waiver of the right to borrow from the children's trust fund, provided for in the property settlement agreement.

On November 21, 1984, petitioner brought a petition for post-judgment relief seeking an increase in child support and an award of attorney fees. Petitioner's attorney at this time was Howard W. Broecker. On March 4, 1985, Broecker filed a substitution of attorneys and petition for attorney fees. On May 8, 1985, the court entered judgment in Broecker's favor against petitioner and respondent for attorney fees and costs in the amount of $1,000 and reserved the issue of enforcement and allocation of the judgment pending final disposition of the support petition. Petitioner then hired attorney Lyle Haskin to represent her. Haskin was subsequently disqualified, and petitioner hired the law firm of Jon Beermann & Associates, Ltd.

The trial court conducted hearings on petitioner's petition to increase support on December 17 and 20, 1985, and January 17, 1986. The court heard testimony and received evidence which established the following facts.

Both petitioner and respondent have remarried. Petitioner was remarried in May 1985. Respondent was remarried in June 1982. The parties' youngest child, Lianne Piccione (Lianne), born October 17, 1977, was diagnosed at six weeks of age as having hydrocephalus, a congenital defect commonly known as water on the brain. At that time, she was fitted with a shunt leading from the right lateral ventricle of the brain to the abdominal cavity to drain out the spinal fluid and thereby relieve the pressure on her brain. The shunt is still in place. At age two, Lianne began having seizures. The seizures consisted of head drops which lasted from 3 to 20 seconds. They ranged from a minor, glassy stare to a temporary loss of consciousness. Lianne would experience 20 to 100 seizures daily. Since July 1984, she has been taking medication to control her seizures. The medication is administered orally four times daily.

Various witnesses, including Lianne's teachers, baby-sitters, family members, and medical personnel, testified regarding Lianne's progress over the years and future needs. The testimony indicated that as recently as 1984, Lianne was still experiencing frequent seizures, was not well coordinated, could not identify colors or letters, and

could not count. Petitioner testified that Lianne was difficult to handle, had no sense of cleanliness, and sometimes required carrying. However, petitioner further testified that Lianne has fewer seizures now than when she was younger. Respondent and his current wife testified that Lianne has been seizure-free since June 1985.

Further, testimony indicated that Lianne can now dress and undress herself, swim, roller skate, and although accompanied by someone else, she can brush her teeth and take care of her own bathroom needs. Lianne has also made progress intellectually and can occasionally recognize colors, numbers, and her own name. Petitioner testified that although she would like to begin using professional medical personnel as sitters for Lianne, she has been utilizing teenagers for that purpose for years. Petitioner introduced testimony of a nurse who concluded, after a 10-minute interview with Lianne, that a licensed nurse should be utilized to take care of her. Additional testimony indicated that neither the teenage sitters nor Lianne's teachers have had any trouble administering Lianne's medication. After hearing testimony from the witnesses, the trial court conducted its own *in camera* interview with Lianne.

Additional testimony received at the hearings indicated that respondent had custody of the three children, including Lianne, every Wednesday morning through Thursday night and on alternate weekends, beginning Friday night and running through Monday morning. Furthermore, it was established that respondent had the three children for a six-week period in fall 1985, during which time petitioner was recovering from back surgery. Respondent also had custody for occasional holidays and vacations.

The parties also introduced evidence of their respective assets and liabilities. The record indicates that respondent, a lawyer, had assets including 1984 earnings of approximately $163,000, 1985 earnings of approximately $116,000, 50% ownership in a professional corporation, a 25% interest in a Florida condominium, and two automobiles. Respondent testified and presented evidence that his 1984 earnings were unusually high due to an exceptional case he handled that year. Respondent further testified that his monthly expenses exceeded $9,000, that he was currently paying $1,700 per month in child support, and that, under the property settlement agreement, he was responsible for all of the ordinary and extraordinary medical expenses of the three children and was required to maintain life insurance policies on them.

Petitioner testified that she was employed as a sales associate for a real estate company. Her assets included 1984 earnings of approxi-

mately $13,000, 1985 earnings of approximately $28,000, a townhouse valued at approximately $100,000, a 1984 automobile, two four-wheel drive vehicles, all of the furniture in her home, and a checking account with a balance of $1,000. She also testified that her current husband earns approximately $50,000 per year and provides her with $200 to $300 per month, groceries, and gas for her vehicles. He also pays for miscellaneous expenses such as entertainment and restaurant bills. Petitioner further testified that her debts are higher now than they were in 1981, increasing as the children have matured. She testified that increased support payments would assist her in buying clothes for both the children and herself, hiring professional medical personnel to take care of Lianne, hiring domestic help, and provide her with sufficient funds to take the children on vacations.

On February 25, 1986, the trial court announced its decision on the support petition by way of a letter opinion. The court acknowledged that Lianne was a special child requiring special attention. However, the court found that her dependency on others had diminished as she had matured and that petitioner had inaccurately described Lianne's need for care. In determining the amount in which to increase support payments, the court applied the statutory guidelines of section 505 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1985, ch. 40, par. 505). Section 505 provides, *inter alia*, that the minimum support for three children should equal 32% of the supporting party's income. Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(1).

Applying the guidelines to this case, the court determined that respondent should be paying approximately $2,300 per month in child support. However, the court determined that there were several factors that compelled the court to deviate from the statutory guidelines. These factors included: (1) the amount of time respondent actually spent with the children on a meaningful cost-required basis is substantially more than exists in a regular custodial visitation arrangement; (2) petitioner's income and use of income to assist in the needs of her present husband, without regard for the needs of her children, must be considered; and (3) in addition to the set support payments, respondent is required to pay all of the ordinary and extraordinary medical, dental, and optical expenses of all three children without contribution from petitioner. The court concluded that the unallocated family support should be increased from $1,500 per month to $1,650 per month, the modest increase being designed to assist petitioner with summer care requirements. The court further concluded that this increase would not affect the additional amount of $200 per month

paid by respondent pursuant to the parties' previously agreed order of modification.

On June 10, 1986, the court entered an order increasing support in accordance with the letter opinion. Also on that date, petitioner was granted leave to file a petition for attorney fees.

On July 8, 1986, petitioner filed her petition for attorney fees requesting $13,522.15 for services rendered by Haskin and Beermann. Also on that date, petitioner filed a motion for reconsideration of the June 10, 1986, order increasing support.

On July 23, 1986, petitioner's motion for reconsideration was denied. Also on that date, testimony and argument relating to petitioner's petition for attorney fees was heard, and the petition was taken under advisement by the court. On July 24, 1986, the trial court announced its decision on the petition for attorney fees by way of letter opinion to counsel. The court found that in order for petitioner to succeed in her petition for attorney fees, she was required to show both her inability to pay and respondent's ability to pay. The court found that although petitioner had successfully shown respondent's ability to pay, she had not demonstrated her inability to pay. Accordingly, the court concluded that the attorney fees due to petitioner's attorneys should be paid by petitioner. No order was entered in accordance with the trial court's letter opinion regarding the allocation of attorney fees at that time.

On August 18, 1986, petitioner filed a notice of appeal, appealing from the order of June 10, 1986, increasing support and the order of July 23, 1986, denying petitioner's motion to reconsider the June 10, 1986, order.

On September 16, 1986, the trial court entered an order in accordance with its previously issued letter opinion on attorney fees. The order provided that fees due to petitioner's various attorneys were reasonable, that petitioner had failed to prove her inability to pay those fees, and that the fees should be paid by petitioner.

On October 10, 1986, petitioner filed a notice of appeal from the order entered on September 16, 1986, requiring petitioner to pay her own attorney fees. On December 31, 1986, this court granted petitioner's motion to consolidate both appeals.

Petitioner raises two issues for review: (1) whether an increase in child support from $1,500 per month to $1,650 per month in deviation of the minimum statutory support guidelines is an abuse of discretion by the trial court, and (2) whether the denial of an award of attorney fees to petitioner from respondent for the child support proceedings was an abuse of discretion.

Initially, we note that respondent has raised the issue of this court's jurisdiction to hear petitioner's appeal of the support orders. On August 18, 1986, petitioner filed a notice of appeal appealing from the orders of June 10 and July 23, 1986, concerning the increase in child support. At the time of the filing of that notice of appeal, no order had yet been entered disposing of the allocation of attorney fees. Respondent maintains that the support orders were not final since there was no disposition on the attorney fees issue and since the court did not make a written finding of appealability as required by Supreme Court Rule 304(a) (103 Ill. 2d R. 304(a)). Respondent contends that in the absence of final orders disposing of the attorney fee issue, the first notice of appeal is premature and ineffective to vest this court with jurisdiction to review the orders entered on June 10, 1986, and July 23, 1986.

Petitioner responds that although no order was entered on the attorney fees issue, the June 10 and July 23, 1986, orders disposed with finality the issue of the child-support increase. Petitioner contends that the issue of attorney fees is ancillary to the issue of child support and a subsequent disposition of the attorney fee issue would not affect the orders regarding child support. We disagree.

Supreme Court Rule 304(a) provides, in pertinent part:

"If multiple *** claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the *** claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. *** In the absence of such a finding, any judgment that adjudicates fewer than all the claims *** is not enforceable or appealable ***." 103 Ill. 2d R. 304(a).

In *In re Marriage of Leopando* (1983), 96 Ill. 2d 114, our supreme court addressed the issue of separate claims in a dissolution proceeding. *Leopando* involved a dissolution proceeding in which a custody order was entered in favor of the respondent. (96 Ill. 2d 114, 116.) The custody order stated " 'that there is no just reason to delay enforcement or appeal of this Order,' " and reserved for future consideration the issues of maintenance, property division, and attorney fees. (96 Ill. 2d 114, 116.) The appellate court reversed on the merits, and the respondent appealed. (96 Ill. 2d 114, 116.) The preliminary issue before the supreme court was whether the order entered by the trial court was final and appealable. (96 Ill. 2d 114, 116.) The supreme court held that an order granting custody in a dissolution proceeding is not a separate claim which is final and appealable pursuant to Rule

304(a). (96 Ill. 2d 114, 119-20.) The court determined that a petition for dissolution is a single claim with multiple issues which are significantly interrelated, and until all of the ancillary issues in the dissolution proceeding are decided, the petition is not fully adjudicated. (96 Ill. 2d 114, 119.) The court concluded that Rule 304(a) was not intended to promote piecemeal litigation regarding each issue of a single claim. 96 Ill. 2d 114, 119-20.

Similarly, in *In re Marriage of Derning* (1983), 117 Ill. App. 3d 620, this court addressed the issue of whether reserving a disposition on attorney fees in a dissolution proceeding rendered all of the other orders in the proceeding unappealable. In *Derning*, the trial court entered orders disposing of the issues of property distribution, maintenance, and custody. (117 Ill. App. 3d 620, 621.) On appeal, the petitioner contended that this court did not have jurisdiction since the notice of appeal was filed prior to a disposition on the issue of attorney fees; therefore, the orders were not final and appealable. (117 Ill. App. 3d 620, 622.) In response, the respondent argued that the divorce decree determining the rights of the parties in the lawsuit was a final and appealable order and the apportioning of fees between the parties was collateral and incidental to the final divorce decree. (117 Ill. App. 3d 620, 622.) This court disagreed, holding that attorney fees were directly related to the central dispute in a dissolution proceeding and were not incidental. (117 Ill. App. 3d 620, 625.) The court held that attorney fees should be allocated before a reviewing court can properly assess the trial court's division of property and decisions regarding maintenance and child support. (117 Ill. App. 3d 620, 626.) The court noted that since the allocation of attorney fees judgment is dependent upon and integrally related to decisions regarding property, maintenance, and child support, their allocation cannot fairly be characterized as collateral or incidental to the divorce decree. (117 Ill. App. 3d 620, 626.) Citing policy considerations of judicial economy, the court concluded that allowing a party to appeal separate orders in a dissolution proceeding prior to a decision on the attorney fee award would create piecemeal litigation. 117 Ill. App. 3d 620, 628.

In the instant case, petitioner attempts to distinguish *Leopando* and *Derning* by arguing that those cases were limited to dissolution proceedings. Petitioner argues that we should be guided by the case of *In re Custody of Purdy* (1986), 112 Ill. 2d 1. In *Purdy*, a party brought a post-judgment petition for change of custody. (112 Ill. 2d 1, 3.) The trial court entered an order in favor of the petitioner, but reserved ruling on the respondent's summer visitation. (112 Ill. 2d 1, 3.) The appellate court dismissed the respondent's appeal pursuant to

*Leopando*, holding that the custody order was not final and appealable since the court reserved judgment on the mother's right to summer visitation. (112 Ill. 2d 1, 3.) Our supreme court reversed, noting that *Leopando* involved dissolution proceedings. The court distinguished the case before it, noting that it involved post-judgment relief for a change of custody and all related claims had been decided except for summer visitation, which would not affect the custody decision. (112 Ill. 2d 1, 5-6.) The court concluded that since the remaining issue of summer visitation would not affect the trial court's decision regarding the custody change, the piecemeal litigation sought to be avoided in *Leopando* was not present. Therefore, the custody order was final and appealable. 112 Ill. 2d 1, 5-6; see also *In re Marriage of Cannon* (1986), 112 Ill. 2d 552, 556 (maintenance order final and appealable where all other issues are resolved and subsequent modification of maintenance order would not affect other issues regarding dissolution).

■ While the instant case also involves a post-judgment proceeding, we find the decisions of *Purdy* and *Cannon* distinguishable. In each of these cases, the issues reserved would neither affect nor be affected by the order appealed from. (*In re Marriage of Cannon* (1986), 112 Ill. 2d 552, 556; *In re Custody of Purdy* (1986), 112 Ill. 2d 1, 5-6.) We are persuaded by the decisions of *Leopando* and *Derning*. As in the instant case, both *Leopando* and *Derning* involved orders reserving a disposition on the issue of attorney fees. (*In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 116; *In re Marriage of Derning* (1983), 117 Ill. App. 3d 620, 622.) Since attorney fees are dependent upon and integrally related to decisions regarding the financial resources of each of the parties, a disposition of their allocation should be made before the reviewing court can properly assess the trial court's decision regarding the child-support orders. (See *In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 119; 117 Ill. App. 3d 620, 626.) Although we note that the trial court did render an opinion on the fees issue prior to the first notice of appeal, no order was entered at that time. Therefore, the court's decision was not final, and the notice of appeal was premature to vest this court with jurisdiction. (See 87 Ill. 2d R. 272.) Moreover, attorney fees were requested in this petition for post-judgment relief and were not merely incidental to the ultimate rights adjudicated. All claims in the petition were not decided.

■ Furthermore, we are persuaded to dismiss the petitioner's appeal of the support orders for lack of jurisdiction since the orders appealed from reserved a claim for disposition, but did not contain the Rule 304(a) language that there is no just reason for delaying enforce-

ment or appeal. (103 Ill. 2d R. 304(a).) Since the orders dispose of fewer than all the claims, absent the statutory language of Rule 304(a), the orders are not final and appealable. (103 Ill. 2d R. 304(a); see also *In re Marriage of Derning* (1983), 117 Ill. App. 3d 620, 628-29.) For these reasons, we conclude that we do not have jurisdiction to decide the first issue raised by petitioner.

The second issue before this court is whether the trial court abused its discretion when it failed to require respondent to pay petitioner's attorney fees. The awarding of attorney fees and the proportion in which the fees should be paid are within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299.) An abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court. *In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 812.

The allowance of attorney fees is justified where the party seeking fees demonstrates a financial inability to pay and shows that the other spouse has the ability to pay. (*In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 152.) Financial inability exists where the party seeking fees shows that payment would strip that person of her means of support and undermine her economic stability. (78 Ill. App. 3d 146, 152.) It is not necessary for the party seeking fees to be destitute in order for the trial court to award attorney fees. (*Donnelly v. Donnelly* (1980), 80 Ill. App. 3d 597, 600.) Furthermore, the party seeking fees should not be required to liquidate her assets to pay her own fees before there can be a finding of inability. 80 Ill. App. 3d 597, 600-01.

In *In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 151, the petitioner in a dissolution proceeding was granted $2,000 in attorney fees for defending the respondent's post-trial motion for rehearing on the disposition of the marital residence and was also granted additional fees for defending the appeal taken by the respondent. The petitioner's financial assets included $16,000 per year derived from income, $1,500 in a savings account, $2,842 in stock, and the marital residence, which was appraised at approximately $142,000. (78 Ill. App. 3d 146, 152.) Evidence showed that the respondent had an annual income of $30,000 to $35,000 a year. (78 Ill. App. 3d 146, 151.) On appeal, the court held that since the evidence did not demonstrate that the petitioner was financially unable to pay her own fees, the trial court erred in allowing the petitioner attorney fees for defense of the post-trial motion and the appeal. 78 Ill. App. 3d 146, 152.

Similarly, in *In re Marriage of Fleming* (1980), 80 Ill. App. 3d

1006, 1008, the petitioner appealed from a divorce decree which ordered the petitioner to pay a portion of the respondent's attorney fees amounting to $445. It was determined that the respondent had assets equalling approximately $15,000 per year in income, $900 in savings, and $8,000 in stock. (80 Ill. App. 3d 1006, 1007.) The petitioner's assets included $25,000 per year in income and $8,000 in savings. (80 Ill. App. 3d 1006, 1007.) In addition, the petitioner had an outstanding debt of $3,000, which he borrowed in order to pay his own attorney fees. (80 Ill. App. 3d 1006, 1007.) The appellate court held that the trial court abused its discretion in ordering the petitioner to pay the respondent's attorney fees. 80 Ill. App. 3d 1006, 1009.

Petitioner attempts to distinguish *Sanborn* and *Fleming*, contending that the disparity in assets between the parties in those cases was not as great as the disparity in assets between the parties in the instant case. Petitioner further contends that respondent is better able to pay her attorney fees from his assets. She cites *Donnelly v. Donnelly* (1980), 80 Ill. App. 3d 597, in support of her position that she is entitled to attorney fees. In *Donnelly*, the trial court awarded fees to the petitioner in a dissolution proceeding even though she had in excess of $200,000 in assets. (80 Ill. App. 3d 597, 599-600.) On appeal, the court noted that while the petitioner had assets of $200,000, only $27,000 was in cash and she derived an income from her assets of only $5,300. (80 Ill. App. 3d 597, 600.) Finding that it was not necessary for the petitioner to liquidate, and consequently reduce, her income-producing assets to pay her own attorney fees, the court held that the trial court did not abuse its discretion in requiring the husband to pay most of them. 80 Ill. App. 3d 597, 600-01.

We do not find the *Donnelly* decision analogous. In *Donnelly*, the attorney fees totalled $65,000, of which the husband was required to pay $55,000. (80 Ill. App. 3d 597, 599.) Furthermore, we note a great disparity in the income between the parties in the *Donnelly* case. In that case, the husband derived an annual gross income of $171,000 and possessed other assets in excess of $3 million. 80 Ill. App. 3d 597, 600.

We find the instant case more analogous to the facts presented in *Sanborn* and *Fleming*. Here, petitioner had assets which included a 1985 income of approximately $28,000, a townhouse appraised at approximately $100,000, a car, two four-wheel drive vehicles, and a checking account with a balance of $1,000. Respondent's assets included a 1985 income of approximately $116,000, a 50% interest in a professional corporation, a 25% interest in a Florida condominium, and two automobiles. Furthermore, respondent was paying

child support, now totalling $1,850 per month, and was responsible for paying the medical bills of the children. Petitioner's attorney fees totalled $15,000. Although these facts, as well as the facts presented in *Sanborn* and *Fleming*, indicate that respondent had a greater ability to pay petitioner's attorney fees, they do not establish that petitioner was unable to pay. Merely showing that the other spouse has a greater ability to pay attorney fees is not sufficient. See *Imes v. Imes* (1977), 52 Ill. App. 3d 792, 797.

■ Here, the trial court heard the evidence, weighed the testimony, and concluded that petitioner had failed to show an inability to pay her own attorney fees. We cannot say that the trial court abused its discretion in denying the petitioner attorney fees.

Accordingly, we affirm the orders of the trial court granting petitioner an increase in support from $1,500 per month to $1,650 per month and denying petitioner attorney fees.

Affirmed.

DUNN and REINHARD, JJ., concur.