*In re* MARRIAGE OF BARBARA RUCHALA, n/k/a Barbara Ross, Petitioner-Appellant, and ALLAN RUCHALA, Respondent-Appellee.

Second District   No. 2—90—0521

Opinion filed February 21, 1991.

972

Lynda J. Khan, of Chicago, for appellant.

No brief filed for appellee.

Robert D. Boyd, of Woodridge, guardian *ad litem.*

JUSTICE INGLIS delivered the opinion of the court:

Petitioner, Barbara Ross, appeals from an order of the circuit court of Du Page County which determined that she should not be granted visitation with her three minor children and found her in contempt of court. Petitioner contends that the trial court's ruling on the visitation issue: (1) improperly shifted the burden of proof to her; and (2) was manifestly erroneous. In addition, petitioner argues that the court violated her due process rights when it held her in criminal contempt of court.

Initially, we note that respondent, Allan Ruchala, has not filed a brief in this case. We will review this case in conformance with the guidelines set out in *First Capitol Mortgage Corp. v. Talandis Con-*

*struction Corp.* (1976), 63 Ill. 2d 128, 133.

The parties' marriage was dissolved on August 19, 1981. Following the dissolution, the parties have returned to court on numerous occasions, often the result of disputes concerning visitation with the couple's three minor children. The most recent dispute, which is the subject of this appeal, occurred when respondent filed a verified petition for an order of protection on April 4, 1988. Respondent alleged that petitioner was obligated to return the three children to him on April 2, 1988, but refused to do so. The children were not returned as of the filing of the petition. The trial court entered an emergency order of protection based on the allegations contained in the petition. On April 14, 1988, the court entered a plenary order of protection.

On August 31, 1988, respondent filed a petition for rule to show cause, alleging that petitioner failed to comply with the court's April 14, 1988, order of protection. On January 6, 1989, before a hearing was held on respondent's petition, the attorney for the minor children filed an emergency petition to suspend visitation. The basis for this emergency motion was petitioner's alleged failure to return the children at the agreed time and telling the children to lie to the police, both of which caused the children to suffer "great emotional distress and concern." The court set March 22, 1989, for a hearing "on all pending matters." Following numerous continuances, the hearing finally began on April 12, 1990.

Petitioner testified at the hearing that she picked up her three children from respondent's home on April 1, 1988, and telephoned the Department of Children and Family Services (DCFS) shortly thereafter due to her concerns with the youngest child. On April 2, 1988, petitioner attempted to call respondent, but was unable to contact him. She was able to speak to him on the following day, but respondent "threatened [her] with jail" if she spoke to anyone and then hung up on her. On April 4, 1988, petitioner stated that a DCFS caseworker came to her home to speak with the children. Following the interview, petitioner informed the children that they would have to return to respondent's home. At this time, the children "went wild" and pleaded with her to allow them to stay with her. Petitioner telephoned the Skokie police department for assistance in returning the children to their father. The children were eventually taken to the Lombard police department before they were returned to respondent.

Respondent testified that he was the father of the children and was awarded custody of them in September 1985. He indicated that he allowed petitioner to have visitation for the Easter weekend beginning on April 1, 1988. Respondent attempted to contact petitioner on

April 2, 1988, to find out when she would return the children to him. However, he was unable to speak with her until approximately 8:30 p.m. on April 3, 1988. At this time, petitioner informed respondent that she would not return the children until after they saw a counselor on the following day. Respondent indicated that the children were supposed to be returned by 6 p.m. on April 2, 1988, due to the Easter holiday. Respondent filed a petition for an order of protection on April 4, 1988, due to petitioner's failure to return the children.

Several other witnesses also testified at the hearing, including police officers, a physician, a DCFS caseworker, and the three minor children. On April 20, 1990, the trial court entered an order denying petitioner's request to set a visitation schedule. The court terminated her rights to visitation and allowed her to have contact with the children only if the children telephoned her. The court also reserved ruling on the issue of attorney fees. In addition, petitioner was found to be "guilty of wilful contempt of court" for failing to return the children on April 2, 1988, from their weekend visitation. Petitioner was sentenced to 30 days in the county jail as a result of the contempt order.

On May 14, 1990, petitioner filed her notice of appeal. Thereafter, attorneys involved in this case filed their petitions and affidavits for attorney fees. The record on appeal ends with an August 1, 1990, filing of a response to an attorney fee affidavit.

■■ Before addressing petitioner's arguments concerning the propriety of the trial court's order on visitation rights, we must first determine whether we have jurisdiction to review this issue. An appellate court may only hear appeals from final judgments or orders, or in situations in which an exception specified in the supreme court rules is applicable. (*Flores v. Dugan* (1982), 91 Ill. 2d 108, 112; *Village of Cary v. Pavis* (1988), 171 Ill. App. 3d 1072, 1073.) We find that we lack jurisdiction to consider this issue because the order appealed is not final and does not fall within any authorized exception.

In the present case, respondent filed a petition for a rule to show cause as a result of petitioner's failure to return the children at the agreed time on April 2, 1988. The title of the petition, along with the prayer for relief, specifically sought attorney fees as a result of petitioner's alleged violations of a previous court order. The trial court specifically found that petitioner violated the court's order by failing to return the children on April 2, 1988. The court used this violation as a basis to decide the questions regarding visitation and to hold petitioner in contempt of court. The last paragraph of the order states: "[t]hat the issue of attorneys Fee's [*sic*] is reserved until the filing of

affavicts [*sic*] of the Attorneys and notice." The record on appeal does not indicate if the attorney fees question has been resolved.

It is thus apparent that the attorney fees question is, for purposes of this appeal, still pending in the trial court. Supreme Court Rule 304(a) provides that an appeal may be taken from a final judgment as to fewer than all claims "only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal." (134 Ill. 2d R. 304(a).) The trial court did not make the requisite Rule 304(a) findings in this case. Since the order at issue in this case disposed of fewer than all claims, it is not final and appealable. See *In re Marriage of Piccione* (1987), 158 Ill. App. 3d 955, 963-64 (order on child support which reserved attorney fees dispute was not final and appealable); *In re Marriage of Derning* (1983), 117 Ill. App. 3d 620, 628-29 (order dissolving marriage and awarding maintenance and child custody was not final and appealable because the attorney fees issue was still pending in the trial court).

This case is another example of why Supreme Court Rule 341(e)(4)(ii) (134 Ill. 2d R. 341(e)(4)(ii)) was enacted. This rule requires a brief explanation in the appellant's brief, under the heading of "Jurisdiction," of the basis for the appeal.

The jurisdictional statement in petitioner's brief reads, in its entirety: "This court has jurisdiction pursuant to *Ill. Rev. Stat.* Ch. 110A §303(a)(i)." However, the purpose of this statement is not merely to tell this court that it has jurisdiction. (*Waitcus v. Village of Gilberts* (1989), 185 Ill. App. 3d 248, 252.) Instead, the jurisdictional statement requirement was intended to provoke counsel to make an independent determination of the right to appeal *before* writing the briefs. (See *Waitcus*, 185 Ill. App. 3d at 252.) Had petitioner taken the time to write an explanatory statement of jurisdiction, she would have hopefully recognized that a claim of attorney fees requested in the pleadings and reserved for ruling in the court's order remained pending in the trial court. We do not have jurisdiction to consider this claim at this time.

In making this determination, we are aware that we previously denied respondent's motion to dismiss this appeal. Respondent correctly argued that the attorney fees issue remained pending in the trial court. However, respondent failed to realize that the contempt issue was, as we will discuss, immediately appealable and was not affected by the pending attorney fees issue. Thus, we could not grant respondent's motion to dismiss the entire appeal.

As we indicated, it is our opinion that we have jurisdiction to decide petitioner's final contention on appeal, namely, whether the

trial court violated her due process rights when it found her guilty of criminal contempt of court. In general, an adjudication of contempt is considered to be final and appealable because it is collateral to and independent of the case in which it arises, as long as the sanction imposed does not directly affect the outcome of the principal action. (*Kazubowski v. Kazubowski* (1970), 45 Ill. 2d 405, 414-15, *cert. denied* (1970), 400 U.S. 926, 27 L. Ed. 2d 186, 91 S. Ct. 188; *In re Marriage of Ryan* (1989), 188 Ill. App. 3d 679, 682.) However, a contempt order is not appealable until the trial court imposes a sanction. *Ryan*, 188 Ill. App. 3d at 682; *In re Marriage of Kitchen* (1984), 126 Ill. App. 3d 192, 194.

■ In this case, the contempt order was collateral to and independent of the issue of visitation and did not directly affect the outcome in the visitation action. For example, the trial court could have made the same ruling on the visitation issue and *not* have held petitioner in contempt of court. Given that the court imposed a sanction on petitioner, it is our opinion that the contempt order in this case was final and appealable.

In addressing the merits of this issue, we note that the trial court, in its written order, found that petitioner "has willfully and intentionally violated the Courts [*sic*] orders by her failure to return the children on 4-2-88 and is sentenced to 30 days in the County Jail." Petitioner contends that the court's contempt ruling was criminal in nature and, as such, the burden of proof should not have shifted to her.

■■ Criminal contempt is conduct which is directed against the dignity and authority of the court. (*People ex rel. Kazubowski v. Ray* (1971), 48 Ill. 2d 413, 416, *cert. denied* (1971), 404 U.S. 818, 30 L. Ed. 2d 118, 92 S. Ct. 78; *Cesena v. Du Page County* (1990), 201 Ill. App. 3d 96, 112-13.) Conversely, civil contempt is coercive, and not punitive, in nature and usually involves failing to comply with a court order. (*Cesena*, 201 Ill. App. 3d at 113.) The contempt in the present case was criminal because the court was not attempting to coerce petitioner into returning the children, but instead was punishing her for failing to abide by several previous orders concerning visitation rights and schedules.

■■ After making this determination, we must next decide whether the contempt was direct or indirect. Direct contempt arises from conduct which occurs in the presence of the judge, while indirect contempt involves acts which occur out of the court's presence. (*People v. L.A.S.* (1986), 111 Ill. 2d 539, 543; *Cesena*, 201 Ill. App. 3d at 113.) In this case, the contemptuous conduct involved petitioner's fail-

ure to return the children on April 2, 1988, in violation of a previous court order. This conduct occurred outside of the court's presence and thus must be construed as indirect criminal contempt.

An indirect criminal contempt proceeding must conform to all of the procedural requirements and rights applicable to criminal trials. (*In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 58.) Included among these rights are the right to be proved guilty beyond a reasonable doubt, the presumption of innocence, and the privilege against self-incrimination. *Betts*, 200 Ill. App. 3d at 58; *In re Marriage of Wilde* (1986), 141 Ill. App. 3d 464, 471.

Petitioner argues that her due process rights were violated when she was required to "show cause" as to why she should not be held in criminal contempt of court. Petitioner points out that this impermissibly shifted the burden of proof to her. We agree. As the *Betts* court stated, a person cannot be required to "show cause" as to why he or she should not be held in indirect criminal contempt of court because that person has a right not to testify based on the privilege against self-incrimination. (*Betts*, 200 Ill. App. 3d at 58-59.) Instead, the alleged contemnor is entitled to have the charges in the petition proved beyond a reasonable doubt. (200 Ill. App. 3d at 59.) Petitioner's contempt adjudication, therefore, must be reversed in this case, as the burden of proof should not have been on petitioner to "show cause" as to why she should not be held in contempt of court.

In conclusion, we hold that we do not have jurisdiction to decide petitioner's arguments with respect to the visitation portion of the order, as this is not final and appealable at this time. We do, however, have jurisdiction to decide petitioner's challenge to her contempt citation and find that this portion of the order must be reversed.

Appeal dismissed in part; reversed in part.

WOODWARD and NICKELS, JJ., concur.