RICHARD LUTTRELL, Plaintiff-Appellant, v. JUDY PANOZZO, Defendant-Appellee.

First District (2nd Division)   No. 1—90—3330

Opinion filed August 17, 1993.

McGrath & Harty, of Orland Park (Richard B. Harty and D. Varraveto, Jr., of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo and Sara E. Cook, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Following a hearing on a rule to show cause, plaintiff Richard Luttrell was found in indirect civil contempt for violating an order restraining him from telephoning or coming within 100 feet of defendant Judy Panozzo and he was ordered to pay a fine of $2,000. On appeal, he contends that the circuit court improperly applied the preponderance of evidence standard rather than that of proof beyond a reasonable doubt. We agree, and for the reasons that follow, we reverse the judgment and remand for further proceedings.

On August 2, 1990, plaintiff filed a complaint in the circuit court of Cook County seeking the dissolution of his partnership with defendant. In his complaint, he alleged that he and defendant lived together in a home owned by defendant at 670 Huntley Terrace in Crete, Illinois, for approximately 15 years and that he engaged in various commercial enterprises, while she worked "principally as a housewife." In May 1990, defendant "ordered" him to vacate the residence and then refused to return some of his personal property or to compensate him for his efforts in improving the value of the home. His complaint requested that defendant be enjoined from transferring any of the joint assets, that an accounting be conducted, and that the partnership be dissolved and assets distributed.

Defendant responded with a motion for a restraining order against plaintiff alleging that since the filing of the complaint, he "ha[d] engaged in a pattern of verbal and/or physical harassment *** including threatening phone calls, verbal threats and intimidation." On September 14, 1990, the circuit court granted the motion, restraining plaintiff during the pendency of the litigation from telephoning defendant's residence, from coming within a 100-foot radius of her, from coming upon her property, and from removing any of her property from the residence. Defendant was likewise restrained from selling or transferring any claimed partnership property.

On September 24, 1990, defendant filed a motion for a rule to show cause why plaintiff should not be held in contempt for violating the court's restraining order. In the motion, she alleged that plaintiff continued to harass and intimidate her, and that plaintiff followed her in his automobile "on numerous occasions" after she left her home. She also asserted that plaintiff was responsible for stealing her car, a claimed partnership asset. The next day, the court granted defend-

ant's motion and restrained plaintiff from disposing of the missing vehicle until a hearing was held.

At the hearing, defendant testified that plaintiff harassed her several times after the court imposed the restraining order. First, plaintiff often stood across the street in the driveway of the house that he purchased after they separated, and watched her come to and leave the house. On September 19, 1990, he yelled at her as she pulled out of her driveway and then followed her in his car at a high speed, coming as close as three feet to her bumper. Next, on September 22, 1990, defendant's car was stolen from a parking space near her friend John Huizinga's home. Four days later, however, the day after the court issued the rule to show cause, she awoke to find the car sitting in her driveway. Then, on October 23, 1990, when defendant, accompanied by Huizinga in his car, took the car to Huizinga's repair yard in Hammond, Indiana, plaintiff followed them to Hammond, jumped out of his car, and started beating his fists on Huizinga's windshield. When she tried to stop plaintiff, he shoved her aside and screamed that he wanted his belongings. Plaintiff then began to drive away, but then turned around and repeated his actions in a violent manner. Finally, on October 29, 1990, plaintiff phoned her at approximately 7:10 a.m. and threatened her. Approximately one hour later, plaintiff called again, said "did you hear me," and hung up.

John Huizinga testified that on October 23, 1990, he and defendant drove in separate cars to his repair yard in Hammond in order to fix defendant's car. When they arrived at the yard, plaintiff, who had followed them from Crete, pulled up and blocked the gate so that they could not back out. Plaintiff then exited his vehicle, began banging on Huizinga's window, and threatened to kill him. Plaintiff also repeatedly hit the window as hard as he could, and then returned to his car and drove away. Moments later, plaintiff returned, and when defendant stepped in front of the door of his car, he "grabbed her and threw her against [Huizinga's] car."

Plaintiff then testified that he called defendant only once after the restraining order was entered, when his uncle died and he needed his aunt's phone number. He also denied following either plaintiff's or Huizinga's vehicle to Hammond. Instead, he was driving on the adjacent truck route with a friend, Peggy Mulvihill, near Huizinga's property when he noticed Huizinga's car. He then pulled into the lot, walked over to Huizinga, and said that Huizinga's mechanics were stealing his tools. Defendant then ran from her car, which was parked 75 to 100 feet away, and said that he was violating the restraining order. Finally, he stated that he had not purchased the house across

from defendant; instead, his son lived there and he visited there approximately one day each week.

Peggy Mulvihill testified that on October 23, 1990, she was sitting in plaintiff's car in Hammond when he got out and began yelling at Huizinga about his tools. Defendant then began yelling and screaming and approached plaintiff. Although plaintiff may have struck Huizinga's car, he did not strike either Huizinga or defendant. Seconds later, plaintiff returned to the car and took her home.

In rebuttal, defendant testified that plaintiff's car was approximately 15 feet away from her when he pulled into Huizinga's lot in Hammond, and that no one else was sitting in his car at that time.

At the conclusion of the evidence, the circuit court found that the preponderance of the evidence demonstrated that plaintiff had committed civil contempt when he shoved defendant in Hammond on October 23, 1990, and when he made threatening phone calls to her on October 29, 1990. The court fined plaintiff $1,000 for each incident and admonished him that any further violations would result in incarceration. This appeal followed.

■ Initially, we address defendant's contention that plaintiff's brief should be stricken and the appeal dismissed. Defendant maintains that plaintiff has failed to comply with the dictates of Supreme Court Rule 341 (134 Ill. 2d R. 341) by omitting the requisite jurisdictional statement and appendices. Moreover, she asserts that he has failed to define adequately the issues involved and to present a cogent argument because he has cited authority only in the "Points and Authorities" section of his brief and simply lists facts which support his contention in his "Argument" section. Although we agree that plaintiff's brief is deficient, we do not conclude that the deficiencies are so great that his brief need be stricken and the appeal dismissed. See *Gallo v. Henke* (1982), 107 Ill. App. 3d 21, 25, 436 N.E.2d 1068.

First, the mere failure to provide a jurisdictional statement or appendices is not fatal because neither is a necessary component of this court's jurisdiction. Rather than a limitation on the court, Rule 341 is simply an admonishment to the parties, and this court may reach the merits of an appeal if the "interest[s] of justice" so require. (*Swanson v. Board of Police Commissioners* (1990), 197 Ill. App. 3d 592, 597, 535 N.E.2d 35, *appeal denied* (1990), 133 Ill. 2d 574, 561 N.E.2d 708.) Thus, this court may properly entertain any appeal where jurisdiction is proper. (See *Frankel v. Otiswear, Inc.* (1991), 216 Ill. App. 3d 204, 211, 576 N.E.2d 955 (holding that jurisdiction over the appeal existed pursuant to Supreme Court Rule 301 even though the appellant failed to include a jurisdictional statement).) Because a finding of contempt

is a final and appealable order pursuant to Rule 301 (*People v. Verdone* (1985), 107 Ill. 2d 25, 30, 479 N.E.2d 925), we find that jurisdiction in this case is proper. Furthermore, although we agree that plaintiff's argument leaves much to be desired, we believe that the interests of justice require an examination of the merits. See *Harvey v. Carponelli* (1983), 117 Ill. App. 3d 448, 451, 453 N.E.2d 820 (reaching the merits of the case despite the appellant's failure to present an organized or cohesive argument).

On appeal, plaintiff questions the quantum of proof necessary for the penalty imposed in this case. Under our law, contempt is characterized as either civil or criminal. "The primary determinant of whether contempt proceedings are civil or criminal in nature is the purpose for which contempt sanctions are imposed." (*In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 43, 558 N.E.2d 404, *appeal denied* (1991), 136 Ill. 2d 541, 567 N.E.2d 328.) If the sanctions are intended to coerce the contemnor to perform a particular act, then the contempt is civil in nature. Because the contemnor is able to "purge himself of contempt" by complying with the mandate of the court, he is said to hold the "keys to his cell." (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 289, 469 N.E.2d 167.) In a civil contempt proceeding, the contemnor is entitled to only "minimal due process," notice and the opportunity to be heard. *In re Marriage of Cummings* (1991), 222 Ill. App. 3d 943, 948, 584 N.E.2d 900.

In contrast, sanctions for criminal contempt are imposed for the purpose of punishing past misconduct. (*Hicks v. Feiock* (1988), 485 U.S. 624, 631-35, 99 L. Ed. 2d 721, 731-33, 108 S. Ct. 1423, 1429-31; *In re Marriage of Wilde* (1986), 141 Ill. App. 3d 464, 469, 490 N.E.2d 95.) If the rationale behind the sanction is similar to that used in punishing other types of criminal behavior—retribution, deterrence, and vindication of societal norms—then the contempt proceedings must conform to the same constitutionally mandated procedural requirements as other criminal proceedings, including recognition of the presumption of innocence, the right to be proved guilty beyond a reasonable doubt, and the privilege against self-incrimination. (*In re Marriage of Ruchala* (1991), 208 Ill. App. 3d 971, 978, 567 N.E.2d 725; *Betts*, 200 Ill. App. 3d at 44, 58.) The failure to provide these procedural guarantees will result in the vacatur of the contempt finding on appeal. See *Wilde*, 141 Ill. App. 3d at 472 (vacating a summary finding of indirect criminal contempt and remanding the cause for a "full and proper hearing").

Here, a $2,000 fine was imposed upon plaintiff in retribution for his violations of the restraining order. Because these were past

actions which could not be undone, plaintiff does not have the ability to purge the contempt. We therefore conclude that plaintiff was found guilty of criminal rather than civil contempt and he was thus entitled to all the procedural safeguards applicable to criminal prosecutions. Since the standard of proof applied by the circuit court was preponderance of the evidence rather than proof beyond a reasonable doubt, the finding of contempt must be reversed and the cause remanded.

For the forgoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for proceedings consistent with this opinion.

Reversed and remanded.

SCARIANO, J., concurs.

PRESIDING JUSTICE McCORMICK, dissenting:

Respectfully, I dissent from the majority's conclusion that plaintiff was found guilty of criminal contempt rather than civil contempt. The line of demarcation between civil and criminal contempt is often indistinct. (*Harvey v. Carponelli* (1983), 117 Ill. App. 3d 448, 452-53, 453 N.E.2d 820.) With a mindset that said civil contempt, the trial court was oblivious to the possibility that some day these proceedings would be deemed criminal contempt. The trial court specifically stated that the contempt is indirect civil contempt and the burden is the preponderance of the evidence. Nevertheless, the majority finds to the contrary and concludes that the contempt is criminal.

To apply the litmus test distinguishing between criminal and civil contempt, the trial court must determine if the intent of the sanction is to punish for past deeds or to coerce future compliance with court orders. Punitive sanctions are criminal and coercive sanctions are civil. However, substance prevails over form. Where sanctions are punitive, but referred to as civil, respondent must be accorded criminal contempt due process. (*People v. Rodriguez* (1987), 162 Ill. App. 3d 149, 514 N.E.2d 1033.) The court may as a sanction sequester a respondent's funds for civil contempt. *Geittmann v. Geittmann* (1984), 126 Ill. App. 3d 470, 467 N.E.2d 297.

The majority finds that the fines were imposed in retribution of plaintiff's past violation of the restraining order, and not to compel future compliance with the order. The record does not support the finding. We should not ignore the trial court's pronouncements that addressed future compliance with the trial court's order:

"THE COURT: For these events, Mr. Luttrell is fined $1,000 apiece. Mr. Luttrell should be mindful of the fact that this is the only time he will be fined for any conduct under this order. The next time this matter comes, if it prevails, if further conduct is presented where this court is convinced that the orders are being violated, Mr. Luttrell will be assured that he will spend some time in the county jail."

The propriety of fines or incarceration as sanctions for an act of civil contempt is well settled. Fines and incarceration have uniformly been recognized as proper sanctions for violations of a prohibitory injunction of a civil nature. *Rothchild & Co. v. Steger & Sons Piano Manufacturing Co.* (1912), 256 Ill. 196, 99 N.E. 920.

Here, the trial court ordered plaintiff to pay $2,000 to the clerk of the circuit court of Cook County. The clerk was not instructed to disburse the funds or dispose of them in an ultimate way. Until this is done, plaintiff has not been permanently deprived of these funds. The funds are merely sequestered and subject to further order of the trial court. If the trial court directs the clerk to disburse the funds to an agency of government or another entity, for their own use, the trial court loses jurisdiction and the plaintiff is permanently deprived of said funds.

In civil contempt respondent may reverse the sanction by purging the contempt. In this case the trial court retains jurisdiction over the funds and has not ordered the ultimate disposition. Plaintiff's subsequent compliance or noncompliance with the trial court's order will determine an ultimate disposition of the funds by the trial court. As with other sanctions for civil contempt, the sanction here allows plaintiff to purge the contempt by compliance with the order.

The evidence is sufficient to prove by a preponderance that respondent willfully violated the restraining order. It is inherent in the trial court's order of contempt and the sanctions imposed that these funds are retained for the purpose of assuring future compliance with the trial court's order.

Therefore, I would affirm the judgment of the circuit court of Cook County and remand this case for further proceedings.