(No. 86634.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. EDWARD M. JUNG, Appellee.

*Opinion filed July 6, 2000.*

FREEMAN, J., joined by MILLER and McMORROW, JJ., specially concurring.

McMORROW, J., joined by MILLER and FREEMAN, JJ., also specially concurring.

HARRISON, C.J., and BILANDIC and RATHJE, JJ., dissenting.

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and William L. Browers and Kendall R. Mills, Assistant Attorneys General, of Chicago, of counsel), for the People.

Thomas L. McClintock and Melinda G. Sammons, of Aplington, Kaufman, McClintock, Steele & Barry, Ltd., of La Salle, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

At issue in this case is the constitutionality of section 11—501.4—1 of the Illinois Motor Vehicle Code, which allows the results of physician-ordered blood or urine tests conducted in the course of emergency treatment for injuries resulting from a motor vehicle accident to be

reported directly to state or local law enforcement officials. 625 ILCS 5/11—501.4—1 (West 1996). The circuit court of La Salle County ruled that the statute violates a patient's right to privacy in his medical records under article I, section 12, of the Illinois Constitution, which states that, "[e]very person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation." Ill. Const. 1970, art. I, § 12. The State appealed the circuit court's ruling directly to this court pursuant to Supreme Court Rule 302(a). 134 Ill. 2d R. 302(a). For the following reasons, we reverse and remand.

On March 22, 1997, at approximately 3:30 a.m., the defendant, Edward Jung, and a passenger riding in his car were involved in a one-vehicle accident. Master Sergeant T.W. Dalton of the Illinois State Police arrived to investigate the accident scene. While Sergeant Dalton was administering first aid to defendant he noticed that defendant had a strong odor of alcohol on his breath and was slurring his speech. Defendant told Sergeant Dalton that he was driving at the time of the accident, and that he had been drinking since approximately 6 p.m. that evening, consuming a total of four or five beers.

An ambulance arrived and took defendant to the hospital for emergency treatment. Sergeant Dalton arrived at the hospital shortly afterward. Approximately 45 minutes after Sergeant Dalton's arrival, a lab technician offered him a copy of defendant's blood test results in accordance with section 11—501.4—1 of the Motor Vehicle Code, which provides in pertinent part:

> "(a) *** [t]he results of blood or urine tests performed for the purpose of determining the content of alcohol, other drugs, or both, in an individual's blood or urine conducted upon persons receiving medical treatment in a hospital emergency room for injuries resulting from a motor vehicle accident may be reported to the Department of State Police or local law enforcement agencies. Such blood or urine

tests are admissible in evidence as a business record exception to the hearsay rule only in prosecutions for any violation of Section 11—501 of this Code [625 ILCS 5/11—501] or a similar provision of a local ordinance, or in prosecutions for reckless homicide brought under the Criminal Code of 1961 [720 ILCS 5/1—1 *et seq.*].

(b) The confidentiality provisions of law pertaining to medical records and medical treatment shall not be applicable with regard to tests performed upon an individual's blood or urine under the provisions of subsection (a) of this Section." 625 ILCS 5/11—501.4—1 (West 1996).

Defendant's blood test revealed a blood-alcohol concentration of 0.19, in excess of the legal limit of 0.08. Sergeant Dalton placed defendant under arrest for driving under the influence of alcohol.

Prior to defendant's first scheduled court date, the State filed a motion to turn over medical records, which was granted over defendant's objection. The State also filed a subpoena *duces tecum*, requesting that defendant's medical records be released to the trial court. Defendant subsequently filed a motion *in limine*, seeking to bar the State from using the blood test results on the ground that section 11—501.4—1 is unconstitutional.

Statutes are presumed constitutional. The party challenging a statute's constitutional validity bears the burden of clearly establishing that the statute is unconstitutional. Since our decision is one of law, we review *de novo* the circuit court's decision with respect to a statute's constitutionality.

In conducting our review, we initially note that the State mistakenly refers to "section 5/11—501.4" several times in its opening brief, rather than to section 5/11—501.4—1, which the circuit court held unconstitutional. Nevertheless, reading the entire brief as a whole, the issues are sufficiently defined and presented so as to make dismissal inappropriate. See *People ex rel. Carter v. Touchette*, 5 Ill. 2d 303, 305 (1955). Our decision to address the State's claims on their merits is supported by

the fact that the appellee neither sought to have the State's brief stricken or sought sanctions against the State, but rather filed a coherent response to the State's arguments.

Nationwide, over 16,000 lives were lost and over 1 million people were injured in alcohol-related crashes in 1997 alone. In Illinois, over 42% of the total motor vehicle crash fatalities involved drunken drivers. Because the public has a compelling interest in safe roads, a driver's expectations of privacy are significantly diminished. Highway driving is a privilege and not a right. Drivers must demonstrate knowledge of driving rules and their own capacities. When a person obtains a driver's license, he consents to the conditions imposed by the legislature in exchange for that privilege, one such condition being that found in section 11—501.4—1.

Under the instant statute, the medical information which may be disclosed to police is strictly confined to the results of physician-ordered blood or urine tests. Given that life, limb and property are seriously threatened by drunken driving and given the all too common reality that a driver involved in a motor vehicle accident may be intoxicated, waiver of a driver's privacy interest in his blood or urine test results in this situation is reasonable and does not violate his constitutional right to privacy.

Defendant additionally argues that section 11—501.4—1 is unconstitutional on its face because it also applies to passengers and pedestrians, who, as nondrivers, are not subject to the same reduced expectation of privacy. Defendant, however, was driving at the time of the accident and, thus, lacks standing to make this challenge.

In the alternative, defendant claims that section 11—501.4—1 is unconstitutional because it violates the separation of powers provisions found in the Illinois Con-

stitution. Ill. Const. 1970, art. II, § 1; art. VI, §§ 1, 16. Specifically, defendant contends that the statute conflicts with the uniquely judicial function of managing the discovery process. Defendant is incorrect. The statute states only that the blood or urine test results "may be reported" to law enforcement officials. 625 ILCS 5/11—501.4—1 (West 1996). This has nothing to do with separation of powers.

Accordingly, the judgment of the circuit court is reversed and the cause is remanded for further proceedings.

*Reversed and remanded.*

JUSTICE FREEMAN, specially concurring:

I concur in the judgment reached by the court today. Nevertheless, I, like Justice McMorrow, believe that the court's opinion "fails to adequately explain the basis for its judgment." See 192 Ill. 2d at 17 (McMorrow, J., specially concurring). I base my decision in this case on the reasons set forth in Justice McMorrow's special concurrence, in which I fully join.

I write separately, however, to provide a more complete picture of the State's briefing deficiencies as identified in the court's opinion and in the dissents. I agree with the court that the brief adequately allows this court to decide the substantive merits of this appeal. See 192 Ill. 2d at 4-5. In contrast, both Chief Justice Harrison and Justice Rathje believe that the State has violated Supreme Court Rule 341(e)(7) (177 Ill. 2d R. 341(e)(7)). Indeed, both take the court to task for, among other things, "advocating" for the State (see 192 Ill. 2d at 28-29 (Rathje, J., dissenting)) and being "an apologist for the State" (see 192 Ill. 2d at 22 (Harrison, C.J., dissenting). In light of these criticisms, I offer the following observations.

Both Chief Justice Harrison and Justice Rathje refer

to Supreme Court Rule 341(e)(7). That provision of the rule provides that an appellant's brief must contain an

> "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. Evidence shall not be copied at length, but reference shall be made to the pages of the record on appeal or abstract, if any, where evidence may be found. Citation of numerous authorities in support of the same point is not favored. Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." 177 Ill. 2d R. 341(e)(7).

According to Justice Rathje, the State's opening brief speaks only to section 11—501.4 and, as a result, the State has waived its challenge to section 11—501.4—1 because points not argued are waived. Chief Justice Harrison believes that because the wrong statute was argued, the State's brief is in violation of Rule 341(e)(7). Both justices appear to take the view that arguments that do not satisfy Rule 341(e)(7) do not merit consideration on appeal.

Rule 341 was promulgated to require parties to an appeal to present the court of review with clear and orderly arguments. See *47th & State Currency Exchange, Inc. v. B. Coleman Corp.*, 56 Ill. App. 3d 229, 232 (1977), citing *Biggs v. Spader*, 411 Ill. 42 (1951). Our appellate rules of procedure have the force of law, and this court has observed that "some logical order for the presentment of the issues to be reviewed must be observed, and the bar, or others appearing before us, are presumed to be aware of the rules prescribed." *Biggs*, 411 Ill. at 44. A party's failure to state properly or informatively the errors relied upon for reversal renders it impossible for a court of review to determine the issues sought to be raised and, as such, justifies dismissal of the appeal. *Biggs*, 411 Ill. at 44-45. Moreover, it is not the duty of this court or any other court of review "to search the record to determine what the real issues in a contest are,

8

nor to seek for material for the disposition of such issues." *Biggs*, 411 Ill. at 44.

I believe that this court's decision in *Biggs* is especially helpful to today's discussion because it provides insight into the type of brief that fails to meet the standard envisioned by our rules.[1] The court in *Biggs* began by noting that the appeal came to the court from several orders entered by the trial court in the course of preliminary hearings,

> "yet none of such orders are complained of in the errors relied upon for reversal. The errors assigned, rather, range from argumentative statements charging judges of the trial court and of the Appellate Court with prejudice and libel, to extremely vague allegations that certain court rules and provisions of the Civil Practice Act have been violated. A reading of the brief fails to bring enlightenment as to whether there was a final and appealable order in this cause, whether there are any grounds which give this court jurisdiction on direct appeal, or whether appellant is seeking a review of the issues in [a previous case], in which this court previously denied his petition for leave to appeal. The entire brief is presented in a manner that is ambiguous and arduous and does not present the issues sought to be determined in the orderly manner required to expedite and facilitate the administration of justice." *Biggs*, 411 Ill. at 43-44.

The court struck the brief and dismissed the appeal, notwithstanding the fact that it had "serious doubts" as to the propriety of the judgment order in the case.

*Biggs* was decided in 1951. Since that time, courts of review have been less detailed in describing the manner in which a brief violates the appellate rules. To an extent, the question is a subjective one. Obviously, whether a brief is of poor quality depends largely upon the perceptions of the reader. Nevertheless, some deficiencies are

---

[1]In *Biggs*, the court addressed compliance with former Rule 39 of this court. Rule 39 was the predecessor of our current Rule 341.

uniformly recognized. Few judges would dispute, for example, that a court may decline to address an argument that speaks in conclusory fashion without citation to legal authority because, without legal support, it is nothing more than an opinion. See *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389, 401 (1987) (noting that failure to support conclusory statement with legal authority results in waiver of the issue). The question is more difficult, however, when an argument *is* supported by legal authority, but the argument itself is obtuse, poorly written, or badly structured. This sometimes occurs when a court is faced with a *pro se* litigant who is without legal training, but it can also occur when a party is represented by licensed counsel. Our case law provides objective guidance in such situations. We have held that the rules of appellate procedure are not jurisdictional and the appeal will not be "arbitrarily dismissed for noncompliance if a reading of the entire brief makes it possible for the court to determine the questions or issues sought to be raised." *People ex rel. Carter v. Touchette*, 5 Ill. 2d 303, 305 (1955). Courts have also used other sanctions, short of dismissal, when confronted with Rule 341(e)(7) violations, including striking the brief or declining consideration of the argument. See, *e.g.*, *Cottrill v. Russell*, 253 Ill. App. 3d 934, 939 (1993); *People v. Trimble*, 181 Ill. App. 3d 355, 357 (1989). Other courts have admonished the responsible party, but nevertheless reviewed the merits in the interests of justice. *Taake v. WHGK, Inc.*, 228 Ill. App. 3d 692, 714 (1992). Therefore, the court of review must determine whether its rules have been substantially complied with (see *Biggs*, 411 Ill. at 45), which means that the question ultimately becomes one of discretion for the reviewing court once jurisdiction is found to exist. See *Luttrell v. Panozzo*, 252 Ill. App. 3d 597 (1993) (and cases cited

therein). See also Ill. Ann. Stat., ch. 110A, par. 341, Historical & Practice Notes, at 478 (Smith-Hurd 1985) (noting that what action a court of review will take when a party is in noncompliance with the appellate rules "is a matter entirely in its discretion, a discretion usually exercised by reference to the effect of the case on the public and on the parties").

In light of the foregoing principles, I cannot agree with those in dissent who believe that the State's brief contains so inadequately presented an argument *vis à vis* section 11—501.4—1 that consideration of the merits by this court is precluded. Justice Rathje grossly misrepresents the State's brief in asserting that the State only referred to the incorrect statute. A careful reading of the State's brief reveals that, contrary to the views expressed in the dissents, the State did speak in terms of section 11—501.4—1. For example, the argument section of the State's brief begins with a heading that reads, "The trial court erred when it declared 625 ILCS 5/11—501.4—1 unconstitutional." This heading corresponds with the first heading of the State's "Points and Authorities" section. The first sentence of the State's argument reads, "On October 29, 1998, the Circuit Court of La Salle County entered a written order declaring 625 ILCS 5/11—501.4—1 unconstitutional and granting Defendant's motion *in limine*." The problem with the State's brief is that it also speaks to section 11—501.4 (625 ILCS 5/11—501.4 (West 1996)).[2] At certain points in the State's argument, the State speaks of section 11—501.4 when it should be speaking of section 11—501.4—1. The erroneous reference to section 11—501.4 occurs on page 9 of

---

[2]Section 11—501.4 deals with the admissibility at trial of chemical blood and urine tests conducted in the course of providing emergency treatment; section 11—501.4—1 permits disclosure of blood or urine tests, used to detect the presence of alcohol or drugs, to law enforcement officers.

the State's brief. It also occurs elsewhere in the argument. I acknowledge that the references to both provisions are confusing. However, any confusion about which particular statute is at issue in this appeal can easily be resolved by referring to the circuit court's written order, which can be found in the record and which is contained in the appendix to the State's brief. In that order, the circuit court expressly ruled that

> "Section 11—501.4—1 of the Illinois Motor Vehicle Code is unconstitutional, based on the decision of the Illinois Supreme Court in *Best v. Taylor* (1997). The privacy interest of a patient as to medical information and records is a right under the Illinois Constitution and can be overcome only by waiver or after a due process hearing as already in place in the Motor Vehicle Code."

That the State's brief could have been better structured (or proofread) is without question,[3] but I disagree that this court must now consider the issue waived as a result of the violation of Rule 341(e)(7). A waiver occurs when the argument consists of conclusory sentences which are not supported by any legal authority. See *Spinelli*, 118 Ill. 2d at 401 (stating that failure to support conclusory statement with legal authority results in waiver of the issue). In such instances, the "waiver" results not from the party's failure to raise the issue (to which the doctrine of "waiver," or more properly procedural default, normally applies), but from the party's violation of the

---

[3]The State is certainly guilty of several shortcomings in its brief. Rule 341(e) requires that every appellant's brief filed in an Illinois court of review must contain certain delineated sections. The State's brief fails to include an accurate "statement of the issue" presented for review. See 177 Ill. 2d R. 341(e)(3). In cases which involve the validity of a statute, such as here, subsection (e)(5) requires that the statute be quoted verbatim in a section that is to precede the statement of facts. The State's brief fails to include such a section. As noted above, the argument section of the brief cites to both sections 11—501.4 and 11—501.4—1 and, as such, is confusing.

appellate rules. In its opening brief, the State contends that, contrary to the circuit court's conclusion, defendant does not have a protected privacy right to medical information and records under the Illinois Constitution. This contention is supported with citations to both Illinois and United States Supreme Court decisions. The State's argument also contains a discussion concerning the inapplicability of our decision in *Best* to the facts of this case. The State further cites decisions from other jurisdictions as persuasive authority. There is no reason why this court cannot respond definitively to these assertions. Clearly, the State has supplied this court with an argument supported by authority such that Rule 341(e)(7) has been substantially complied with. To hold otherwise would be to elevate form over substance.

Apart from the confusing reference to section 11—501.4, neither Chief Justice Harrison nor Justice Rathje identifies what it is about this brief that causes them to react to it so harshly when briefs that are just as bad, if not worse, have been accepted and the merits of the appeal have been reached. See, *e.g.*, *People ex rel. Carter v. Touchette*, 5 Ill. 2d 303 (1955); *People v. Stork*, 305 Ill. App. 3d 714 (1999); *Eickmeyer v. Blietz Organization, Inc.*, 284 Ill. App. 3d 134 (1996); *Luttrell v. Panozzo*, 252 Ill. App. 3d 597 (1993); *In re Marriage of Forbes*, 251 Ill. App. 3d 133 (1993); *Geers v. Brichta*, 248 Ill. App. 3d 398 (1993); *Roberts v. Dow Chemical Co.*, 244 Ill. App. 3d 253 (1993); *First National Bank v. Loffelmacher*, 236 Ill. App. 3d 690 (1992); *Zadrozny v. City Colleges*, 220 Ill. App. 3d 290 (1991); *Gallo v. Henke*, 107 Ill. App. 3d 21 (1982); *People v. Willett*, 44 Ill. App. 2d 545 (1976). After reviewing the State's brief and the relevant case law in this area, I believe that it is "possible for the court to determine the questions or issues sought to be raised." *Touchette*, 5 Ill. 2d at 305.

I must also stress that the four members of this court

who reach the merits of this appeal today are not the only ones who could discern the State's argument. As the court's opinion correctly notes, the appellee in this case has never asked this court to take any punitive action with regard to the State's opening brief. The appellee has not sought to have the State's brief stricken nor has he sought sanctions for noncompliance with our rules. Instead, the appellee has filed a brief that contains a reasoned and lucid response to the State's opening brief. This, in my view, further strengthens the notion that this is not a case in which the appellant's argument is unintelligible. See *People v. Willett*, 44 Ill. App. 3d 545, 547 (1976) (noting that appellate court would be perfectly justified in striking appellant's brief that contained many unintelligible arguments, but choosing instead to address the merits of the appeal).

In view of the foregoing, I cannot agree with my dissenting colleagues that the court today is advocating, as well as adjudicating, the points the State seeks to raise. As noted, the State's position can be easily deduced by reading its brief. To address the argument does not require this court to "advocate" in any way. Rather, the court is responding to an inartfully presented argument, something, I might add, this court unfortunately has to do in many cases. As Chief Judge Posner of the Seventh Circuit Court of Appeals has pointed out, "if failure to make one's grounds of appeal perspicuous were a ground for waiver, we would have very few issues to decide." *Kopec v. City of Elmhurst*, 193 F.3d 894, 905 (7th Cir. 1999) (Posner, C.J., dissenting). Given the fact that the constitutionality of a statute is at issue here, the court is perfectly justified in exercising the discretion that we have in this matter so as not to punish the party for "the sins of [its] attorney." *Roberts v. Dow Chemical Co.*, 244 Ill. App. 3d 253, 256 (1993). See also Ill. Ann. Stat., ch. 110A, par. 341, Historical & Practice Notes, at 478

(Smith-Hurd 1985) (stating that when there is noncompliance with the appellate rules, the court of review "does not necessarily have to visit the consequences *** on the litigant but may vindicate the rule by enforcement proceedings against the attorney responsible [citation] or by referring the matter to the Attorney Registration and Disciplinary Commission").

As the foregoing authority demonstrates, a court of review has the discretion to enforce the rules of appellate procedure in the manner it sees fit with an eye toward the interests of justice and concern for the parties. The cases make clear that not every infraction of Rule 341(e)(7) can or should be handled in the same way. A majority of this court has seen fit to merely admonish the attorney responsible for the violation and not visit the consequences on the litigant—in this case the People of the State of Illinois. This is an appropriate exercise of our discretion and is one that is more than amply supported by Illinois decisional law.

Had the Chief Justice and Justice Rathje been content to reproach only the four members of today's majority, I would end this special concurrence here because we in the majority have the opportunity to respond to their charges. Unfortunately, however, both justices have chosen to lace their dissents with unnecessary aspersions directed at the State, which, at this stage in the appeal, has no real opportunity to defend or explain its actions. It is for this reason that I strongly take issue with the tone and tenor in which my colleagues have voiced their displeasure with the office of the Attorney General. For example, Chief Justice Harrison chastises the office for the "inadequacy" of its staffing and questions the competency of the attorneys employed there (see 192 Ill. 2d at 23 (Harrison, C.J., dissenting)). The Chief Justice levels these charges based upon "requests for time extensions in other cases pending before our

court" and by citing to another case in which a brief was not filed. See 192 Ill. 2d at 23 (Harrison, C.J., dissenting). I fail to see the relevance of citations to other cases in this situation. Nor do I find this type of one-way dialogue between members of this court and the office of the Attorney General very constructive as the Attorney General is no longer in any position to respond at this time. In my opinion, the time for such discussion between the office of the Attorney General and members of this court has long passed. I must point out that the very first mention—indeed the only mention before today—of the State's briefing problems came in the waning moments of the assistant Attorney General's opening oral argument, which was held in Springfield nearly one year ago, on June 22, 1999. Counsel had concluded her prayer for relief and invited the court to ask any questions it might have. Justice Rathje then asked her which statute was at issue, stating that he had trouble understanding her brief. Counsel admitted that her brief contained the error and responded that section 11—501.4—1 was the provision at issue. Justice Rathje's reply was simply "good enough." This was the extent of the discussion between this court and the Attorney General's office regarding the propriety of the State's brief. I believe that everyone would have been better served had these justices seen fit to voice their disapproval then rather than to harangue now. In light of the exchange at oral argument, one can hardly fault the State for failing to seek leave to file a corrected brief (see 192 Ill. 2d at 27 (Rathje, J., dissenting)). Such a response from the bench certainly does not foreshadow the accusatory and hostile tone taken against the State in these dissenting opinions.

It is my hope that this type of rancor and incivility can be avoided in future cases by the use of a show cause order, which can be issued by the court *sua sponte*. I note that this is the procedure utilized by the Federal Court of

Appeals for the Seventh Circuit. See, *e.g.*, *United States v. Sosa*, 55 F.3d 278 (7th Cir. 1995); *United States v. Ford*, 806 F.3d 769 (7th Cir. 1986). This court would be well served by following the Seventh Circuit's example. The use of a show cause order in these situations would eliminate any appearance of arbitrariness on the part of the court of review because it gives the party in question the opportunity to be heard on the matter before punitive action is taken against it, particularly in cases where the opposing party has not made an issue of the alleged infractions.

JUSTICES MILLER and McMORROW join in this special concurrence.

JUSTICE McMORROW, also specially concurring:
This is a direct appeal from an order entered by the circuit court of La Salle County holding section 11—501.4—1 of the Illinois Vehicle Code (625 ILCS 5/11—501.4—1 (West 1996)) unconstitutional. Section 11—501.4—1 states that results of blood or urine tests performed for the purpose of determining the level of alcohol or drugs in a person's bloodstream while the person is in a hospital emergency room receiving treatment for injuries resulting from a car accident may be reported to law enforcement agencies. 625 ILCS 5/11—501.4—1 (West 1996). Section 11—501.4—1 also states that "confidentiality provisions of law pertaining to medical records and medical treatment" will not apply to the results of tests performed in these circumstances. 625 ILCS 5/11—501.4—1 (West 1996). The circuit court ruled that section 11—501.4—1 violates the privacy right in medical records guaranteed by the Illinois Constitution, citing *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997).

The majority reverses the circuit court and finds section 11—501.4—1 constitutional. While I concur in the

result, I believe that the majority opinion fails to adequately explain the basis for its judgment. The legal community and the legislature rely on our opinions to map the evolving course of the law. I write separately, therefore, to provide the analysis which forms the basis for my decision in this case.

As an initial matter, the majority concludes that section 11—501.4—1 does not constitute an impermissible infringement on a driver's privacy interests. The majority seems to ground its ruling on the reduced privacy expectation that drivers are deemed to have by virtue of their operation of an automobile, as well as the State's compelling interest in discouraging driving while intoxicated. I agree.

Although this court has recognized a constitutionally based privacy interest in "confidential medical information" (*Best v. Taylor Machine Works*, 179 Ill. 2d 367, 459 (1997)), the court has also noted that an individual's expectations of privacy are reduced when operating an automobile (*Fink v. Ryan*, 174 Ill. 2d 302, 310 (1996)). This is because the state subjects automobile driving to intensive regulation. *Fink*, 174 Ill. 2d at 310. Other factors may reduce an individual's expectation of privacy even further. In *Fink*, for example, this court found mandatory analysis of an automobile driver's blood-alcohol content constitutional because, among other factors, the conditions under which the blood could be drawn reduced a driver's expectation of privacy. More specifically, under the statute, blood could be drawn only if the driver suffered specified, severe injuries in an automobile accident and an officer had already issued the driver a ticket for drunk driving. Also, the law required anyone involved in an auto accident to stay at the scene, exchange driver information and render aid to the injured. These are conditions which necessarily involve extended presence at the scene and the involvement of

law enforcement officers. In sum, the court found that these facts increased the likelihood of a decreased expectation of privacy, so that a blood test performed under these circumstances could be deemed only minimally intrusive. *Fink*, 174 Ill. 2d at 311.

Additionally, the *Fink* court held that the mandatory blood testing served a "special need" of the State, beyond mere law enforcement, to keep chemically impaired drivers off of Illinois roads. *Fink*, 174 Ill. 2d at 302, 308-09. Thus, *Fink* appears to hold that the presence of a specialized need permits the state to intrude upon a privacy interest such as compelling a citizen to submit to a blood test, as long as the state can concurrently show the existence of a reduced expectation of privacy. *Fink*, 174 Ill. 2d at 309, 312.

The "special need" described in *Fink* to keep Illinois roads free of intoxicated drivers is present in the case at bar. Additionally, the driver whose blood or urine is collected under circumstances described in section 11—501.4—1 has a reduced expectation of privacy concerning his person while operating an automobile. The mere operation of an automobile is a heavily regulated activity. *Fink*, 174 Ill. 2d at 310. The statute permits the blood or urine to be drawn under only very narrow circumstances: (1) in a hospital emergency room, (2) where the driver is brought for treatment of injuries sustained in an auto accident, and (3) solely for purposes of determining the presence of intoxicants in the driver's system. 625 ILCS 5/11—501.4—1 (West 1996). In circumstances such as these, drivers would not only have a reduced expectation of privacy in information concerning their physical condition, but they might even expect that such information would necessarily be obtained in order to render medical treatment to them. Thus, the conclusion reached by the majority that section 11—501.4—1 is constitutional is consistent with Illinois legal authorities.

Defendant also argues that section 11—501.4—1 violates the separation of powers doctrine (Ill. Const. 1970, art. II, § 1; art. VI, §§ 1, 16) because it infringes upon this court's authority to regulate the court system, and because it conflicts with supreme court rules concerning discovery. Defendant relies principally on *Best* and *Kunkel v. Walton*, 179 Ill. 2d 519 (1997), to urge this court to invalidate section 11—501.4—1. However, *Best* and *Kunkel* are distinguishable from the case at bar. In *Best*, the court construed an amendment to section 2—1003(a) of the civil procedure code that mandated a waiver of the physician-patient privilege for all plaintiffs filing personal injury claims. 735 ILCS 5/2—1003(a) (West 1996). The amendment prescribed a wholesale disclosure of all medical records, irrespective of their relevance to the plaintiff's lawsuit. The amendment also prescribed mandatory dismissal of the lawsuit if the plaintiff failed to comply with the medical record disclosure requirements.

The *Best* court held section 2—1003(a) unconstitutional because the statute conflicted with supreme court rules concerning discovery. *Best*, 179 Ill. 2d at 449. In particular, section 2—1003(a) undercut those rules that allow a court to tailor discovery sanctions to the severity of the recalcitrance exhibited by a litigant. *Best*, 179 Ill. 2d at 449. Section 2—1003(a) also conflicted with rules that permit a court to limit discovery to materials that are relevant to the claims or defenses raised by the parties, and to enter orders of protection to shield particularly sensitive materials from unnecessary disclosure. *Best*, 179 Ill. 2d at 445. In addition, this court found that section 2—1003(a) unduly infringed upon the court's authority by requiring the court to dismiss a plaintiff's lawsuit, with prejudice, if the plaintiff failed to follow the statutory disclosure requirements. *Best*, 179 Ill. 2d at 441-42; see also *Kunkel*, 179 Ill. 2d at 528-37.

I agree with the majority that section 11—501.4—1 does not violate the separation of powers doctrine. The pertinent provision of section 11—501.4—1 at issue in this case permits a hospital worker to show the results of a blood test, conducted under limited circumstances, to law enforcement personnel. The subject provision is unrelated to discovery rules that control the course of any subsequent prosecution against the patient. Therefore, nothing in this provision is adverse to rules of discovery promulgated by this court. Nor are the terms of section 11—501.4—1 at odds with a court's authority to control the course of litigation.

Finally, I share the concerns voiced by Justice Freeman in his specially concurring opinion, and join in his specially concurring opinion. I believe that Justice Freeman is correct in his observation that the remarks of Chief Justice Harrison and Justice Rathje which are critical of the State and the Attorney General's office are untimely and unfair, because the State and the Attorney General's office have been denied an opportunity to respond to those criticisms. As Justice Freeman states, had a majority of the court found the State's brief incomprehensible, the court should have issued a show cause order (155 Ill. 2d R. 375), or, as advocated by Justice Bilandic, directed the parties to further brief the issue.

JUSTICES MILLER and FREEMAN join in this special concurrence.

CHIEF JUSTICE HARRISON, dissenting:

My colleagues have misrepresented the circumstances of this case. The statute invalidated by the trial court is section 11—501.4—1 of the Illinois Vehicle Code (625 ILCS 5/11—501.4—1 (West 1996)). In its appeal, however, the State directs its arguments to the validity of section 11—501.4 of the Illinois Vehicle Code (625 ILCS 5/11—

501.4 (West 1996)). Section 11—501.4—1 is not a subsection of section 11—501.4. They are separate provisions.

The argument portion of the State's brief contains no "contentions of the appellant and the reasons therefor, with citation of the authorities," as they pertain to section 11—501.4—1. The State's analysis does not mention 11—501.4—1 at all. All arguments and citations to authority are directed instead to section 11—501.4, which has nothing to do with this case. With respect to section 11—501.4—1, the statute at issue here, the State's brief is therefore in violation of Supreme Court Rule 341(e)(7) (177 Ill. 2d R. 341 (e)(7)), which is applicable to criminal appeals pursuant to Supreme Court Rule 612(i). 177 Ill. 2d R. 612(i); *People v. Thomas*, 116 Ill. 2d 290, 303-04 (1987).

The State's failure to comply with Rule 341(e)(7) should be fatal to its appeal. A reviewing court is entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented. Arguments inadequately presented are waived. See *People v. Lantz*, 186 Ill. 2d 243, 261-62 (1999); *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389, 401 (1987); *Vernon Hills III Ltd. Partnership v. St. Paul Fire & Marine Insurance Co.*, 287 Ill. App. 3d 303, 311 (1997); see also *Maun v. Department of Professional Regulation*, 299 Ill. App. 3d 388, 399 (1998) (arguments that do not satisfy Rule 341(e)(7) do not merit consideration on appeal and may be rejected for that reason alone).

Although the State did eventually address arguments to the correct statutory section in its reply brief, those arguments came too late. Under Supreme Court Rule 341(e)(7), points not argued in the appellant's brief are waived and cannot be raised for the first time in appellant's reply brief. 177 Ill. 2d R. 341(e)(7); *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 507 (1997); *Illinois Farmers Insurance Co. v. Cisco*, 178 Ill. 2d 386, 395 (1997); *People v. Thomas*, 116 Ill. 2d at 304.

Because the State's contentions as to section 11—501.4—1 are not properly before us, analysis of the State's position would require this court to speculate as to the nature of the arguments that could have been made, but were not. See *In re Parentage of Janssen*, 292 Ill. App. 3d 219, 228 (1997). A reviewing court will not become an advocate for, as well as the judge of, points the appellant seeks to raise. See *Vernon Hills*, 287 Ill. App. 3d at 311. The State should therefore be deemed to have forfeited its right to challenge the propriety of the circuit court's judgment. See *Cisco*, 178 Ill. 2d at 395; *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 516 (1988); *Maun*, 299 Ill. App. 3d at 399.

The State's error was evident to this court when we heard oral argument. Why my colleagues have chosen to ignore it today is something only they can account for. Perhaps they believe some higher purpose will be served. Perhaps they want to spare the Attorney General's office embarrassment. In either case, I cannot condone their actions.

The power to promulgate rules conferred on this court by the Illinois Constitution does not carry with it any concomitant right to disregard the rules whenever we are unhappy with the effect they will have in a particular case. To the contrary, as author of the rules, our court has a special duty to see that they are honored and obeyed in every case, regardless of the circumstances. We sit above all tribunals, save the United States Supreme Court. If this is to be a government of laws, not men, we, above all others, must set the example.

Our court should not be an adjunct to the prosecution or an apologist for the State. When the Attorney General's office makes an error as fundamental as the one committed in this case, we do a disservice when we look the other way. Lawyers entrusted with responsibility for defending the laws of Illinois should at least be

able to correctly identify what laws they are supposed to be defending. If something so basic is beyond their competence, what will happen when they are called upon to protect the interests of the people in cases where human life or public safety are at stake? The consequences could be disastrous.

The Attorney General's office has suffered chronic personnel problems. Based upon requests for time extensions in other cases pending before our court, it appears that turnover is high and staffing inadequate. Work is not being completed as it should. In one instance, *People v. Barrow*, No. 80332, delays were so extreme that this court was forced to hold that the State had forfeited its right to file a brief.

The problem in this case may be symptomatic of these difficulties. When too few people are forced to do too much work, mistakes are inevitable. What can be done about this I do not know. That is a matter for the Attorney General alone. All I know is that if we say nothing and do nothing, the Attorney General will have no incentive to put things in proper order. The problems will continue unchecked. They will come back to confront us again, and the people of Illinois will be the worse for it.

For the foregoing reasons, the judgment of the circuit court of La Salle County should be affirmed. I therefore dissent.

JUSTICE BILANDIC, also dissenting:

I cannot join the majority opinion. This court should order the appellant to brief the issue of whether section 11—501.4—1 of the Illinois Vehicle Code (625 ILCS 5/11—501.4—1 (West 1996)) is unconstitutional. The appellant here addressed its opening brief to the constitutionality of a different statutory section; namely, section 11—501.4 of the Illinois Vehicle Code (625 ILCS 5/11—501.4 (West 1996)). The appellant's brief block-quotes

section 11—501.4 and argues that this court should hold that statute constitutional.

The appellee's brief makes no mention of the error. The appellee's brief simply argues that section 11—501.4—1 is unconstitutional. The appellee may not have noticed the appellant's error because of the similarity in the numbering of the two separate statutory provisions; however, it is possible that the appellee saw the mistake and chose not to argue waiver.

The failure of both parties to call the appellant's error to the court's attention in a timely manner indicates that there may have been a mutual mistake. Instead of issuing an opinion without proper briefing, this court should issue an order directing the parties to rebrief this cause.

JUSTICE RATHJE, also dissenting:

The majority concludes its discussion of the separation of powers issue by stating that this case "has nothing to do with separation of powers." 192 Ill. 2d at 6. Stated more accurately, this case, as defined and argued by the State, has nothing to do with section 11—501.4—1.

According to the majority, the "issue in this case is the constitutionality of section 11—501.4—1 of the Illinois Motor Vehicle Code." 192 Ill. 2d at 2. Curious. Apparently, I have received a different set of briefs than my colleagues. In my copy of the State's brief, the "Issue Presented for Review" is, "Whether the trial court erred in declaring *625 ILCS 5/11—501.4* unconstitutional and in granting Defendant's motion *in limine* to exclude Defendant's blood test results." (Emphasis added.) The majority is obviously deciding an appeal other than the one that the State has presented to us.

To be sure, the statute that the majority cites is the one that the trial court held unconstitutional. Unfortunately, the State on appeal decided to defend the consti-

tutionality of a different statute. Any notion that the "Issue Presented for Review" section merely contains a typographical error is immediately dispelled when the State quotes section 11—501.4 *in its entirety* and refers to that statute no less than 15 times. The State consistently argues that section 11—501.4 is constitutional. The argument that the State should have made is that section 11—501.4—1 is constitutional. The State did not make that argument and thus has forfeited its challenge to the trial court's ruling. See 177 Ill. 2d R. 341(e)(7) ("points not argued are waived"). Accordingly, the trial court's judgment should be affirmed.

Admittedly, in its reply brief, the State finally block-quotes section 11—501.4—1 and argues that this section is constitutional. The State does so, however, without acknowledging its previous mistake. Indeed, the State acts as if it has been arguing about this statute all along. At this point, the State could no longer preserve its argument. According to Supreme Court Rule 341(e)(7), "Points not argued are waived and *shall not be raised in the reply brief*, in oral argument, or on petition for rehearing." (Emphasis added.) At oral argument, the State admitted that it was aware that it had argued the wrong statute in its opening brief. In other words, the State knew that it had argued the wrong statute, but took no corrective action, such as seeking leave to file a corrected brief. Instead, the State left this court with an opening brief that made no sense and then slipped the correct statute into its reply brief without acknowledging the problem.

Apparently, Chief Justice Harrison and I are the only members of this court bothered by the State's conduct in this case.[4] The majority ignores the State's clear waiver and addresses the constitutionality of Section 11—

---

[4]Justice Bilandic argues in a separate dissent that this court should order the appellant to brief the issue of whether section

501.4—1. Not only does the majority fail to criticize the State's conduct, the majority rewards the State by making the State's argument for it and then deciding the case in the State's favor. Justice Freeman asserts in his special concurrence that "[a] majority of this court has seen fit to merely admonish the attorney responsible for the violation." 192 Ill. 2d at 14 (Freeman, J., specially concurring, joined by Miller and McMorrow, JJ.). Where? I can find no instance in either the majority opinion or in Justice Freeman's concurrence in which the State is admonished. "Admonish" means "[t]o caution or advise. To counsel against wrong practices, or to warn against danger of an offense." Black's Law Dictionary 48 (6th ed. 1990). The majority has nowhere cautioned the State against arguing the wrong statute on appeal. Quite the contrary. The majority instead assures the State that there are *no* consequences to its actions. According to the majority, when the trial court holds a statute unconstitutional, the State can defend the constitutionality of an entirely different statute on appeal, and this court will simply address the arguments the State should have made instead of the ones the State actually made.

Justice Freeman provides several defenses for the majority's decision to ignore the fact that the State argued the wrong statute on appeal. First, Justice Freeman scolds the dissenting justices for criticizing the State and argues that this court should have given the State notice of the problems in the brief and allowed it to respond. Justice Freeman cites no authority for the proposition that this court must give the parties notice and an opportunity to respond before finding an issue waived. Indeed, what would be the purpose of the waiver rule if such a requirement existed?

11—501.4—1 is unconstitutional. This court has already done so. The State was ordered to file its brief in this case on April 27, 1999.

Next, Justice Freeman argues that the State should not have sought leave to file a corrected brief because it acknowledged the briefing problem at oral argument. The State, however, acknowledged the problem only in response to a question from the bench. The time for filing a corrected brief was when the State realized that there was a significant deficiency in the brief. Instead of doing so, the State argued the correct statute in its reply brief without acknowledging the previous mistake. The State apparently hoped that the court would not notice the mistake. I disagree with Justice Freeman's conviction that this conduct is somehow beyond reproach from this court.

Justice Freeman's final defense is that the State's brief contains the proper argument but improper citations. According to Justice Freeman, "clearly the State has supplied this court with an argument such that Rule 341(e)(7) has been substantially complied with." I must respectfully disagree with Justice Freeman's assertion that a party substantially complies with Rule 341(e)(7) by devoting its entire brief to arguing about a statute other than the one at issue in the case.

Section 11—501.4 addresses the admissibility in evidence of blood tests conducted in the course of providing emergency medical treatment. Section 11—501.4—1 addresses when the results of blood tests taken during emergency treatment can be reported to law enforcement officials. The entirety of the State's brief is addressed to the *admissibility* of blood test results, not whether those results can be reported to law enforcement officials. For instance, Justice Freeman notes that the State's brief discusses out-of-state authority. True. The brief discusses out-of-state authority that holds that similar blood test results are *admissible*. Justice Freeman further assures the reader that the State's brief addresses a patient's right to privacy in his or her medical

records. Again, Justice Freeman is correct. The State's argument on this issue is captioned: *"Admission of Defendant's blood test results does not violate Defendant's fundamental right to privacy as guaranteed by the Due Process Clause of the Fourteenth Amendment."* (Emphasis added.)

The clearest example of the State's confusion in this case appears in section C of its brief,[5] where the State specifically applies its arguments to the terms of the statute. In this section, the State discusses the legislature's intent in passing section 11—501.4, block-quotes that statute, notes that it sets forth specific requirements for the admission into evidence of blood test results, explains why that statute is neither arbitrary nor discriminatory, and argues that the statute meets the rational basis test. Thus, this is not, as Justice Freeman claims, an example of an argument failing to be "perspicuous." 192 Ill. 2d at 13 (Freeman, J., specially concurring, joined by Miller and McMorrow, JJ.). The State's argument is entirely clear; it is just the wrong argument. My colleagues in the majority claim that they can discern that an argument about the evidentiary admissibility of blood test results pursuant to section 11—501.4 is really an argument about turning over blood test results to law enforcement officials pursuant to section 11—501.4—1. I must take them at their word, but when I read the State's argument about the admissibility of blood tests pursuant to section 11—501.4, I discerned that it was precisely that.

In sum, reviewing courts in this state should not become advocates for, as well as judges of, points that an appellant seeks to raise. *Vernon Hills III Ltd. Partnership v. St. Paul Fire & Marine Insurance Co.*, 287 Ill. App. 3d 303, 311 (1997). Here, my colleagues in the majority are apparently content to play the dual roles of

---

[5]There are two section Cs in the State's brief. I am referring to the one that appears on pages 15 through 18.

both appellate advocates for the State and judges of the appeal. I would prefer that they confine their duties to those of justices of the Illinois Supreme Court.